**In re Joel A. RUDICIL, Debtor.**

**AMERITRUST COMPANY, N.A., Plaintiff,**

v.

**Joel L. RUDICIL, Defendant.**

**Bankruptcy No. B90–00899(B). Adv. No. B90–0157.**

United States Bankruptcy Court, N.D.Ohio, E.D.

Jan. 17, 1991.

Michael E. Jackson, Cleveland, Ohio, for defendant.

Robert D. Kehoe, Jerome W. Cook, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for plaintiff.

Mitchell J. Yelsky, Cleveland, Ohio, for Carole Rudicil.

Joan A. Kodish, Strachan, Green, Miller, Olender & Hobt, Cleveland, Ohio, for Huntington Bank.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this adversary proceeding the Plaintiff, Ameritrust Company, N.A (Ameritrust) filed its complaint to obtain a determination of dischargeability of certain debts allegedly owed it by Joel A. Rudicil (Debtor). After due notice to all entitled parties, the matter was tried to the Court. Upon an examination of the testimony adduced, arguments of counsel, the evidence admitted, and a review of the record, generally, the following constitutes the Court's findings and conclusions:

### I.

The Debtor sought relief in this Court by the voluntary filing of his petition under Chapter 7 of the Bankruptcy Code. Ameritrust, a secured creditor, seeks a determination of dischargeability of its claims against the Debtor's estate. The claims arise from a term note agreement (Note) executed by the Debtor with Ameritrust and secured by a second mortgage (Second Mortgage) on certain real property which was the Debtor's former personal residence (PT–12, 14, 15 and 16). In order to extend financing of indebtedness owed by the Debtor, Stone Drilling, Inc. and a third party in an amount of $187,241.95, the Debtor executed the Note and Second Mortgage in favor of Ameritrust on January 23, 1987. This Second Mortgage was given on a personal residence which at the time of execution was jointly owned by the Debtor and his former spouse, Carole Rudicil.[1] The Debtor signed the mortgage in the presence of Ameritrust officers but was allowed to take the document home to obtain his wife's signature thereon. Subsequently, the Debtor returned a fully executed Second Mortgage to Ameritrust which purportedly bore duly witnessed and executed signatures and notarization. The parties dispute the authenticity of the signature of the former spouse (Carole) and the resulting validity of the Second Mortgage document. Upon the filing of the Debtor's Chapter 7 petition, which included the Ameritrust debt, this adversary proceeding ensued.

### II.

In resolving this matter, the principal issue is whether the bank's scheduled debt is dischargeable in this Chapter 7 case. Section 523 [11 U.S.C. § 523] addresses the dischargeability of debts under the Bankruptcy Code. Therein, § 523(a)(2) provides the following:

§ 523. Exceptions to Discharge.

(a) A discharge under section 727—of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

---

1. Stone Drilling, Inc. is a business entity owned by the Debtor. Carole and Joel Rudicil were divorced in 1988.

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the Debtor caused to be made or published with intent to deceive ..."

11 U.S.C. § 523(a)(2)(A) and (B).

Ameritrust's complaint alleges that this Court's jurisdiction is premised upon § 523(a)(2) and (6) of the Bankruptcy Code. In pertinent part, § 523(a)(6) provides an exception to the discharge of any debt:

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6).

### III.

■ Upon examination of the record, testimony, and evidence admitted, the issue is resolvable under § 523(a)(2). The underlying basis for Ameritrust's claim is the extension of credit through the restructuring of multiple debts on which the Debtor has liability. (PT–11). Such an extension brings this matter within the exception to discharge provisions of § 523(a)(2), as the present matter concerns a refinancing of credit. (PT–11, Agreement consolidating and extending terms of certain loans dated January 23, 1987; testimony of Ron Gibson on Direct Exam.). ·

### IV.

The testimony of the several witnesses has been examined to determine whether the elements of § 523(a)(2) have been satisfied. The Debtor was informed by Ron Gibson, an official of Ameritrust, that the refinancing desired by the Debtor could not be effectuated without his issuance of a Second Mortgage on his personal residence favorable to Ameritrust. (Cross–Exam., Ron Gibson). This testimony was credible. On December 12, 1986, the Debtor agreed to give the Second Mortgage to Ameritrust (*Id.*). See also, P–6. p.2. Exhibit PT–14 was demonstrated to show that the Debtor signed the mortgage, but his wife's signature did not appear thereon. The Debtor returned to Ameritrust a fully executed Second Mortgage document. This document had a defective notarial acknowledgment, as it was affixed on a separate sheet of paper but was attached to the mortgage. Gibson was under the belief that the Debtor's wife, Carole, had signed the mortgage and that the Debtor had witnessed it. (*Id.*) The Debtor never informed Gibson that Carole did not sign the mortgage. The testimony of Ellen Keller, another Ameritrust official, further supported the fact that the Debtor never informed the Bank's officials that his wife's signature was not on the Second Mortgage he issued. (Direct Exam., Ellen Keller). Keller also testified that a recordable Second Mortgage was a condition to the restructuring of the Debtor's loans. This testimony of Keller was credible. In fact, the Debtor's wife never signed the Second Mortgage, (Cross–Exam., Joel Rudicil), and the Debtor was aware that Ameritrust officials were under the belief that his wife had signed the note and mortgage. (*Id.*; Joel Rudicil's Depo. Testimony, March 24, 1988, p. 92, Lines 16, 19 and 24). In summary, the aforementioned testimonies reveal, collectively, that the Debtor incurred the refinanced debt by means of false pretenses as well as a false representation. On either basis, the exception to discharge of debt under § 523(a)(2)(A) is satisfied, and it is hereby so found to be nondischargeable.

### V.

Although it becomes unnecessary for the Court to address other complaint allegations, nondischargeability of the subject debts has further been established under § 523(a)(2)(B) of the Code. In view of the required elements to be satisfied, the relevant testimony was examined. The Debtor signed the Second Mortgage in his own capacity as a co-owner of the personal residence, in addition to allegedly witnessing his wife's signature thereon. (Cross–Exam., Ellen Keller). The Debtor's office manager, Mrs. Sedlak also witnessed Carole Rudicil's signature on the mortgage. (*Id.*) The Debtor, however, testified that his wife never signed the mortgage, but rather, he signed her name to the mortgage with her prior consent. It is clear from the testimony that the wife, Carole,

was not in the presence of either the Debtor or Sedlak when her name was signed on the mortgage or witnessed. (Testimony, Joel Rudicil; Testimony Carole Rudicil). In fact, Carole Rudicil's testimony was clear to state that she never signed the mortgage (PT–14) nor did she authorize the Debtor to sign her name on the mortgage document. The testimony of Carole Rudicil was credible. Section 523(a)(2)(B)(i) was clearly established.

The Debtor knew that the execution of a Second Mortgage on his personal residence was a condition precedent to his obtaining a restructuring of his indebtedness with Ameritrust. (Gibson, Cross–Exam.). Implicitly, a recordable mortgage was a further condition upon which the Debtor's loans could be refinanced (Keller, Direct Exam.). The Debtor's forging of his wife's signature, coupled with a defective attestation and notarization, is indicative of not only the Debtor's intent to deceive but also his awareness that his independent financial condition was insufficient to effectuate the issuance of a Second Mortgage on his residence to Ameritrust. To further this fraudulent purpose, the Debtor used a written document. (See Exs. P–14 and P–15). Subsection (ii) of § 523(a)(2)(B) was established by the requisite burden.

The evidence admitted was sufficient to prove that the fraudulent Second Mortgage document issued to Ameritrust by the Debtor was reasonably relied upon by Ameritrust. Bank officials believed that Carole Rudicil had signed the Second Mortgage and that it had been duly witnessed and notarized since the Debtor was allowed to leave the Bank with the mortgage document for this specific purpose. (Gibson, Cross Exam.; Keller, Direct Exam.). Further, the Debtor never informed the Bank's officials to the contrary. In fact, the Bank would not have approved the loan refinancing had it known of the forgery. (Id.) The Bank relied upon the validity of the Second Mortgage presented by the Debtor. An Ameritrust official even inquired of the notary public who notarized the defective mortgage if Carole Rudicil signed the mortgage in her presence. That inquiry was made prior to the Bank filing the Second Mortgage at the County Recorder's office (Keller, Direct Exam.; Keller's Depo., p.

54). At no time did the Debtor inform Bank officials that he had obtained his wife's consent to affix her signature to the mortgage document. (Keller, Direct Exam.). Ameritrust's reliance upon the validity of the second mortgage presented by the Debtor was reasonable. See, 11 U.S.C. § 523(a)(2)(B)(iii); *Knoxville, Teachers Credit Union v. Parkey*, 790 F.2d 490, 14 B.C.D. 691 (6th Cir.1986) (The "reliance" element of § 523(a)(2)(B)(iii) was satisfied when the credit union acted in good faith in relying on a loan application submitted by the debtor).

As opined by the Sixth Circuit, the critical factor in discerning the issue of reasonable reliance under § 523(a)(2) is to accord a construction of the Bankruptcy Code which "is consonant with equity and consistent with the object and intention of Congress.... The determination of reasonableness must be made by evaluating all the facts and circumstances of the case." *In re Phillips*, 804 F.2d 930, 933 (6th Cir.1986). At a minimum, in the present matter, the executed Second Mortgage presented to Ameritrust by the Debtor, Joel Rudicil, reflects gross recklessness as to the authenticity of the signatories, with knowledge that it would induce Ameritrust to refinance the subject debt. (*See, In re Martin*, 761 F.2d 1163, 1167 (6th Cir.1985). Within the context of § 523(a)(2)(A), his conduct clearly reflected a false pretense and a false representation.

Under § 523(a)(2)(B)(iv) of the Bankruptcy Code, nondischargeability of a debt is supported where a written statement used by a debtor was made or published with an intent to deceive. The present record is supportive of a deceitful intent by the Debtor. The loans which the Debtor sought to have refinanced with Ameritrust were distressed and in default. (Mazzolini; Direct Exam.). Fully apprised of the fact that Ameritrust required his issuance of a Second Mortgage on his residence which he knew would be difficult to obtain due to marital difficulties with his wife, Carole, the Debtor presented Ameritrust with a Second Mortgage on which he had signed Carole's signature without her consent.

(Carole Rudicil, Cross Exam.; Joel Rudicil, Cross–Exam.; Depo. p. 10; Ex. PT–15 and PT–16). The Debtor agreed to give Ameritrust a Second Mortgage on or before December 6, 1986, before he ever consulted with his wife. He failed to discuss the matter of a Second Mortgage with Carole prior to December 6, 1986, asserting that she showed no interest in their financial matters (Joel Rudicil, Cross Exam.; Joel Rudicil Depo. p. 11). In fact, the Debtor testified that he did not discuss any financial matters with Carole. (*Id.*). As of March, 1988 the Debtor had told no one at the Bank about the nature of the signatures on the Second Mortgage he issued. The same was true as of March, 1989 (*Id.*). The Debtor's testimony in this regard was equivocal. On direct examination, the Debtor testified that he was not pleased with Ameritrust's demand for a Second Mortgage. He had several meetings with Ameritrust officials to negotiate the loan restructuring. He knew he was instructed by the Ameritrust officials to take the Second Mortgage document with him to obtain his wife's signature and have it witnessed and notarized. He never met with his wife at anytime to discuss the Second Mortgage matter with her, but claims he had a telephone conversation with her one week after he had executed the Second Mortgage at Ameritrust, at which time she purportedly consented to his signing her name. (J. Rudicil, Direct Exam.). He later testified that he gave his wife a copy of the executed mortgage (Ex. PT–15) but, interestingly, testified that he never discussed the matter with her. (*Id.*) The totality of the aforementioned factual findings reasonably conclude that the Debtor intended to deceive Ameritrust by his presentment of a forged Second Mortgage in order to obtain refinancing on his debt to Ameritrust. Section 523(a)(2)(B)(iv) was established.

## VI.

■ In this Circuit, a creditor seeking an exception to discharge of a debt under § 523(a)(2) bears the burden of proof. That burden must be sustained by clear and convincing evidence in order for the debt to be found nondischargeable. *Knox-*

*ville Teachers Credit Union, supra,* 790 F.2d at 491. In the matter at bar, the requisite standard of proof has been met by Ameritrust for the debt to be nondischargeable under § 523(a)(2). Having so found, it becomes unnecessary to address the issue of nondischargeability under § 523(a)(6), as alleged.

Accordingly, the scheduled Ameritrust loans are hereby found to be nondischargeable.

IT IS SO ORDERED.