**In re Louis ZAGAR, Debtor.**

**COWEN & COMPANY, Plaintiff,**

v.

**Louis ZAGAR, Defendant.**

**Bankruptcy No. B90–15546(B).**
**Adv. No. B91–1132.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Feb. 11, 1992.

Lawrence E. Oscar, Michael J. Garvin, Hahn Loeser & Parks, Cleveland, Ohio, for plaintiff.

David W. Abbuhl, Zellmer & Gruber, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The Plaintiff, Cowen & Company (Cowan) filed this adversary proceeding to have the Court determine the dischargeability of certain debts under provisions of § 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code [11 U.S.C. 523(a)(2)(A), (a)(4) and (a)(6) ]. Following a trial proceeding and a review of the record, generally, the subject debts are hereby determined to be nondischargeable.

The relevant facts are generally not in dispute and the foregoing constitutes the Court's findings and conclusions. Cowan is a national securities brokerage firm with local offices in Cleveland, Ohio. The Defendant–Debtor Louis Zagar (Debtor) was employed as an account salesman by Cowan's Cleveland office from 1983 until his resignation in 1989. Following his resignation from Cowan in 1989, the Debtor revealed to Cowan officials that he had caused a series of unauthorized transactions in Cowan customer accounts between October 1987 and early 1989. (Liebowitz, Direct Exam.). This revelation was addressed through the testimony of Lawrence Liebowitz, Cowan's general counsel. The testimony of Liebowitz was both credible and was unrefuted. He testified, unequivocally, that the Debtor told him that he (the Debtor) issued letters of transfer authorizations regarding certain customer accounts. Regarding the letters of authorization exhibited, (Ex. 13), Liebowitz testified that the Debtor told him that he forged the signatures on those letters of authorization. Raymond J. Timko, a Cowan customer and father-in-law of the Debtor, was in attendance at a meeting in Liebowitz's office when the Debtor acknowledged these forgeries. This testimony was unrefuted.

Customer accounts which are the subject of this action involve the Ball Chemical Company account, the Polk account, the Timko accounts and the Satallos account. Regarding the Ball and Timko accounts, the unrefuted testimony of Liebowitz revealed that the Debtor admitted taking about $25,000.00 from the Ball/Timko accounts and that Timko, trustee of the Ball Chemical account and owner of his personal account, did not authorize the transactions in Exhibit 13 prior to the trades being made. Regarding the Sattalos account, Liebowitz again testified that the Debtor admitted that certain transactions (See, Ex. 13) made by the Debtor on their account were unauthorized. On the Polk account, Liebowitz testified that the Debtor told him during the meeting in his office on March 22, 1989 that he handled the Polk account and that he forged documents pertaining to this account and had transferred money from the Polk account for his personal use through forged letters of authorization. (Liebowitz, *Id.*). Again, this testimony of Liebowitz was unrefuted. During the March 22, 1989 meeting with Liebowitz, the Debtor implicated no other person regarding his commission of the subject unauthorized activities.

Following his March 22, 1989 meeting with the Debtor, Liebowitz reviewed the subject accounts and related documents including copies of certain checks drawn on those accounts, in addition to the letters of authorization (LOA's). (See Exs. 13 and 21). Liebowitz testified that those checks and LOA's were examined and supported the unauthorized activities which were described to him and committed by the Debtor. The checks were written either to the Debtor's personal bank account or to certain of the Debtor's customers. Liebowitz concluded that the Debtor had used the Ball/Timko accounts as his personal bank. (Liebowitz, Direct Exam.).

The Debtor, personally, was not in attendance during any of the trial proceedings. Upon inquiry, the Court was informed by the Debtor's counsel that said counsel had instructed the Debtor not to appear during the trial proceeding. No other explanation was offered regarding the Debtor's absence from the trial. As a result, the Debtor has presented no evidence to refute the testimony of Liebowitz which clearly stated that the Debtor admitted forging the LOA's in Exhibit 13 and otherwise engaged in unauthorized conduct respecting the subject accounts. Raymond J. Timko, who also was in attendance at the March 22, 1989 meeting in Liebowitz's office where the Debtor reportedly acknowledged the forged authorizations, did not refute the testimony of Liebowitz relative to the forgeries and unauthorized acts. By written stipulation, the parties hereto have stipulated that a nondischargeable judgment, pursuant to § 523 of the Code is to be entered against the Debtor regarding the criminal charges on which he entered a guilty plea in the amount of $2,886.88 in the state court.

Prepetition, the claims of the affected account holders against Cowan and others were submitted to arbitration. During the course of those proceedings, Cowan settled the Ball/Timko claims in an amount of $109,500.00 (Exs. 20 and 24(A)). Cowan settled the Polk claim for $20,000.00 (Exs. 20) and obtained a release (Ex. 12). Following arbitration proceedings, Cowan was unsuccessful on its claim against the Satallos but prevailed on its third party counterclaim against the Debtor (Ex. 24–A) Cowan paid $7,450.05 to the Sattalos. On that award to Cowan, the Debtor has not paid. (Liebowitz, Direct).

During the Debtor's case-in-chief, Raymond J. Timko testified on behalf of the Debtor. His testimony was credible, generally. Mr. Timko is the owner of Ball Chemical Company (Ball Chemical) and two other companies. He is the Debtor's father-in-law and has known the Debtor for eight years. Regarding the present matter, Timko testified that he had been a customer of Cowan since 1985, opening a personal account, as well as a trustee account on behalf of Ball Chemical. Other family members also had accounts with Cowan. The Debtor was his account broker at Cowan. In late 1986, he was informed by Cowan that one Martin Winnick would, from that point in time, be primarily responsible for handling his account and that the Debtor would assist Mr. Winnick. Prior to this change, he testified that he had experienced no problems with his account at Cowan. In March of 1989, the Debtor informed him that certain problems existed regarding his accounts. In pursuance of that concern, he travelled to New York where he met with Liebowitz, the Debtor, and other Cowan officials. The purpose for his visit was to see what could be done to rectify the problems with his accounts. (Timko, Direct Exam.). His testimony further revealed that he later learned that unauthorized transactions had been made on his accounts.

■ Upon cross-examination, Mr. Timko acknowledged that the Statement of Account for Ball Chemical (Ex. 1T4), with a statement period of January 1, 1987 through January 30, 1987, revealed that the Debtor was listed as the account executive for that account. The same was true for other Ball Chemical statements of account demonstrated as Exs. 14, U, W, X, Y, Z, AA, BB, CC, DD, EE, FF and GG. Winnick was listed as the account executive on Ex. 14 HH for the period January 1, 1988 through January 29, 1988. With that demonstration, Mr. Timko testified that he was unaware that the Debtor had handled his accounts in 1987. He further testified that, on his personal account, he mostly dealt with the Debtor. On the Ball Chemical account, he was the trustee for the Company's pension and benefit plan account, but he did not read the documents regarding that account due to his inability to understand the documents. In order to prevail in this matter, the burden of proof is upon the party contesting the discharge, and the burden must be carried by a preponderance of the evidence. *In re Grogan*, — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Cowan, as the complainant is obliged to meet that burden.

■ In this matter, nondischargeability is sought on the accounts paid to account holders by Cowan due to the alleged unauthorized activities of the Debtor. Reportedly, those amounts paid to the subject account holders was in excess of $130,000.00. Under § 523(a)(2)(A) of the Bankruptcy Code the discharge of a debt is to be denied under § 727 where the debt pertains to money, property or services, etc., to the extent that it was obtained by false pretenses, a false representation, or actual fraud. (See 11 U.S.C. 523(a)(2)(A)). At bar, the testimony is unrefuted that the Debtor forged LOA's (Ex. 13) to cause an unauthorized transfer of customer account funds for unauthorized uses. As a direct result of such improper conduct, Cowan paid in excess of $130,000.00 on customer claims. The Debtor's conduct in this regard, by his admitted forgery of the exhibited LOA's not only was a false representation but, also, constituted a fraudulent act. *In re Cerar*, 97 B.R. 447 (C.D.Ill.1989); *In re Rudicil*, 123 B.R. 778 (Bankr.N.D.Ohio 1991). Accordingly, the amounts paid by Cowan to its customers on account of the Debtor's misconduct is hereby determined to be nondischargeable under § 523(a)(2)(A).

■ Cowan also seeks a ruling of nondischargeability under § 523(a)(4) of the Code. Thereunder, § 523(a)(4) precludes a discharge of a debt which was created as a result of fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. In the present matter, the Debtor, while in the employ of Cowan, worked as an account salesman. In that capacity, he accepted account orders for his customers on behalf of Cowan and processed the investments and other transfers on the accounts. As such, he served in a fiduciary capacity respecting the funds he received from his customers. As determined above, the transactions addressed under Ex. 13 were unauthorized, as admitted by the Debtor to Liebowitz. That reported admission was unrefuted. Further, the Debtor admitted to Liebowitz that he forged the signatures on those documents. Again, that testimony was unrefuted. Accordingly, the payments made by Cowan on ac-

count of that unlawful activity by the Debtor are hereby determined to be nondischargeable. Such activity was fraudulent, and to the extent that certain of the checks under Ex. 21 indicated payments to National City Bank and were subsequently cashed by the Debtor for his personal use, such constituted embezzlement. *See, Matter of Michel*, 74 B.R. 80 (Bankr.N.D.Ohio 1985), *aff'd.*, 74 B.R. 88 (N.D.Ohio 1986).

■ Lastly, Cowan seeks a nondischargeability ruling based upon provisions of § 523(a)(6) of the Code. Therein, a debt is nondischargeable where it was created as a result of willful and malicious injury by the debtor to another entity or to the property of another entity. Clearly, the Debtor's conduct in this regard was willful. He admitted the acts complained of and the reported admission was not controverted. The Plaintiff, Cowan, sufficiently established a *prima facie* case under each allegation under § 523, whereupon the burden of going forward with sufficient evidence to refute the changes shifted to the Debtor. *In re Decker*, 36 B.R. 452 (D.C.N.D.1983); *In re Gans*, 75 B.R. 474 (Bankr.S.D.N.Y. 1987). No evidence demonstrated by the Debtor adequately met that shifted burden. Accordingly, the Debtor's conduct was willful and malicious as he intended the actions committed. Discharge of the amounts paid by Cowan on account of Debtor's conduct is denied under § 523(a)(6).

Accordingly, judgment is hereby rendered for the Plaintiff, Cowan, in the amount of $136,950.35, reflecting the amounts Cowan paid on the Ball/Timko accounts, the Polk account, and the Sattallos account. That amount is nondischargeable.

IT IS SO ORDERED.