In re Alan D. EISENBERG, Debtor.

Kathaleen Bassler HARSCH, Paula C. Miller, Douglas M. Bihler, Lisa Tallar Kuehl and Thomas D. Kuehl, Plaintiffs,

v.

Alan D. EISENBERG, Defendant.

Bankruptcy Case No. 91–21185–MDM. Adv. No. 91–2161.

United States Bankruptcy Court, E.D. Wisconsin.

Nov. 13, 1995.

# MEMORANDUM DECISION

MARGARET DEE McGARITY,
Bankruptcy Judge.

## BACKGROUND

This is an old case, but it has not been idle. The plaintiff's motion for summary judgment based on 11 U.S.C. § 523(a)(6) was denied early in the case, and their motion for summary judgment based on 11 U.S.C. § 523(a)(4) was held in abeyance while the underlying action to determine liability bounced twice from the district court to the Seventh Circuit Court of Appeals. Final liability has now been established by the district court and affirmed by the court of appeals. This court finds that the elements of issue preclusion have also been established, and the plaintiffs are entitled to summary judgment in their favor under 11 U.S.C. § 523(a)(4). For the reasons stated below, their motion for summary judgment is granted.

This court has jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This memorandum decision constitutes this court's findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052.

## FACTS

The debtor is an attorney whose bankruptcy resulted from an extended period of suspension of his license to practice law. Originally filed as a chapter 11, it was subsequently converted to chapter 7.

Prior to his cessation of practice and this bankruptcy filing, the debtor's law firm dissolved under circumstances that can be inferred from the record as highly acrimonious. The plaintiffs are all former employees of the firm. Before the breakup, the plaintiffs participated in an ERISA qualified pension plan of which the debtor was the trustee and administrator.

Pamela A. Johnson, Cook & Franke, S.C., Milwaukee, WI, for plaintiffs.

Russell C. Brannen, Jr., O'Neil, Cannon & Hollman, S.C., Milwaukee, WI, for defendant.

Upon leaving the employ of the debtor's law firm at various times in 1986, the plaintiffs sought to obtain plan documents and an accounting of benefits to which they were entitled and to withdraw those amounts.

Their inquiries were repeatedly rebuffed, often in a highly insulting manner.[1]

In 1987, the plaintiffs filed a complaint in the district court to enforce their rights under ERISA. Shortly thereafter, the debtor distributed their benefits. This did not satisfy the plaintiffs, however. The action continued to trial, and a jury awarded the plaintiffs compensatory damages sustained as a result of the debtor's delay in distributing their benefits. This award was reversed by the Seventh Circuit Court of Appeals as such damages were unavailable under ERISA statutes. The case was remanded to determine attorney fees associated with the enforcement of the plaintiffs' rights and to determine other applicable statutory penalties.[2] 29 U.S.C. §§ 1332(g)(1) and (c). The district court did so, and judgment was entered.[3] This determination was affirmed by the court of appeals. *Harsch, et al. v. Eisenberg,* No. 94–1488, 1994 WL 675133 (7th Cir. Dec. 1, 1994).

The plaintiffs have now asked this court to find as a matter of law that the attorney fees and statutory penalties due the plaintiffs are excepted from the debtor's discharge under 11 U.S.C. § 523(a)(4).

### SUMMARY JUDGMENT STANDARD

■ The policy of the summary judgment procedure is to dispose of factually unsupported claims or defenses, to serve judicial economy, and to avoid unnecessary litigation. *Cloutier v. United States,* 19 Cl.Ct. 326 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Motions for summary judgment in bankruptcy are governed under Fed.R.Bankr.P.

7056, incorporating Fed.R.Civ.P. 56. A motion for summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

■■ In ruling on a motion for summary judgment, the court shall view the facts in a light most favorable to the party opposing the motion, in this case, the debtor. *Brock v. American Postal Workers Union,* 815 F.2d 466, 469 (7th Cir.1987). The court's role is not to weigh the evidence on the merits but to determine whether there is a genuine triable issue in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The summary judgment movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. 317, 106 S.Ct. 2548. The movant must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' " which establish the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. If this burden is met, the party opposing the motion then has the burden of showing the existence of a material, factual dispute. Fed.R.Civ.P. 56(e). The Debtor may establish the existence of a "genuine issue as to [a] material fact" by setting forth evidence in response to the motion which, if proved, would negate a necessary element of plaintiff's complaint. *Celotex,* 477

---

**1.** *See Harsch, et al. v. Eisenberg,* 956 F.2d 651, 653, n. 2 (7th Cir.1992) (examples of letters written by debtor to plaintiffs).

**2.** *Harsch, et al. v. Eisenberg,* 956 F.2d 651 (7th Cir.1992), *cert. denied,* 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).

**3.** The judgment in the district court was entered on February 4, 1994, as follows:
IT IS ORDERED AND ADJUDGED that defendants' motion for attorney fees be and the same is hereby DENIED; and
IT IS FURTHER ORDERED that plaintiffs' motion for statutory penalties pursuant to 29

U.S.C. section 1132(c) be and the same is hereby GRANTED; defendant Eisenberg is hereby directed to pay statutory penalties in the amount of $1,052 to Thomas Kuehl, $1,064 to Lisa Tallar, $1,018 to Douglas Bihler, and $955 each to Paula Miller and Kathaleen Bassler Harsch; and,
IT IS FURTHER ORDERED that plaintiffs' motion for attorney's fees pursuant to section 1132(g)(1) be and the same is hereby GRANTED in the amount of $40,998.25 ($39,771.10 in fees plus $1,227.15 in disbursements).
*Harsch, et al. v. Eisenberg,* No. 87–C–1345 (E.D.Wis. filed Feb. 4, 1994).

U.S. at 324, 106 S.Ct. at 2553. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

■ In the present case, plaintiffs have moved for summary judgment. They must, therefore, establish that there are no triable issues as to the elements of their § 523(a)(4) nondischargeability claim on which they bear the burden at trial by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1990). All reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion, i.e., the debtor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Brock v. American Postal Workers Union*, 815 F.2d at 469. When the moving party in a summary judgment proceeding also bears the burden of persuasion at trial (as in the present case), that party must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to prevail as a matter of law. *United States v. One 107.9 Acre Parcel of Land*, 898 F.2d 396, 398 (3d Cir.1990). Here, based on the decision of the district court establishing statutory penalties and attorneys' fees, plaintiffs have met both of these burdens.

## ISSUE PRECLUSION

The movant of the present motion for summary judgment asserts that this court may, through the doctrine of issue preclusion, formerly known as collateral estoppel, make certain findings based on the record established in the recently completed litigation between the same parties. The use of issue preclusion in bankruptcy cases is based on dicta from the Supreme Court's holding in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), in which the court stated:

> If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [current § 523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10.

■ The same rule applies to issues previously litigated by the same parties in the federal district court.

Bankruptcy courts in this circuit apply the doctrine of issue preclusion when all of the following elements are present:

> 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987) (citations omitted); *see also In re Conway*, 148 B.R. 881, 883 (Bankr. E.D.Wis.1992). The court in which liability was adjudicated must have applied "the same standards as the bankruptcy court would [apply]" in deciding the issue. *Klingman*, 831 F.2d at 1295. Because it is undisputed that the debtor was fully represented in all proceedings in the district court and court of appeals, this court will consider only the first three *Klingman* elements of issue preclusion. Furthermore, there is no indication in the record or the parties' briefs to indicate that the district court used a standard of proof other than preponderance of the evidence.

■ The party asserting the doctrine of issue preclusion has the burden of proving the necessary elements and submitting to the court a record "sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980). This court must now examine the issues which were actually and necessarily litigated and decided in the district court proceedings and compare those issues with the determination this court must make under 11 U.S.C. § 523(a)(4) to rule on plaintiff's summary judgment motion.

*SECTION 523(a)(4) DETERMINATION*

A debt may be excepted from a debtor's chapter 7 discharge under 11 U.S.C. § 523(a)(4) if the court finds the existence of a fiduciary relationship between the parties and that the debt arose as a result of fraud or defalcation in the context of that fiduciary capacity. 11 U.S.C. § 523(a)(4). The elements required to establish a § 523(a)(4) exception to discharge of a claim are: (1) the existence of either an express of technical trust; (2) the status of being a fiduciary of such a trust; and (3) fraud or defalcation while acting in the capacity of a fiduciary of such a trust.

The U.S. Court of Appeals for the Seventh Circuit has held that the determinative characteristic of a fiduciary relationship for the purposes of this statute is that it exists independent of the wrong; the trust relationship must pre-exist the breach which created the debt. *Matter of Marchiando*, 13 F.3d 1111, 1115–16 (7th Cir.1994). The relationship must either be one of express trust or must involve a relation "of inequality that justif[ies] the imposition on the fiduciary of a special duty" before the wrong is committed. *Id.* at 1116. State law or nonbankruptcy substantive law may be considered when making this determination and may itself give rise to such a relationship or obligation. *Hayton v. Eichelberger (In re Eichelberger)*, 100 B.R. 861, 864 (Bankr.S.D.Tex.1989); *Bowman v. Hollander*, 1992 WL 373172 (N.D.Ohio May 25, 1992).

The debtor, on page 3 of his supplemental brief in opposition to plaintiff's motion, acknowledges that an express trust exists. He further admits that he was acting in a fiduciary capacity with respect to the ERISA plan and the plan beneficiaries. This admission satisfies the court that the defendant was acting "in a fiduciary capacity" so that the provisions of § 523(a)(4) apply. Therefore, if the debtor may be shown to have breached his fiduciary duties through an act of defalcation, and the debt arose on account of such breach, his debt stands nondischargeable in bankruptcy.

As explained above, the only element left to be proved to have the debt declared nondischargeable under § 523(a)(4), and the one in dispute, is whether the debt owing to plaintiffs was caused by a defalcation. *Klingman v. Levinson*, 831 F.2d at 1295 (citing 3 L. King, COLLIER ON BANKRUPTCY § 523.14 (15th ed. 1987)). The debtor, of course, asserts that the acts committed which were found by the district court to constitute a violation of ERISA do not also constitute a defalcation under sec. 523(a)(4) of the Bankruptcy Code.

There has been no hard and fast definition of defalcation in the context of § 523(a)(4), but the Seventh Circuit has adopted the position, like the Fifth and Sixth Circuits, that mere negligence does not constitute defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382–85 (7th Cir.1994) (construing "defalcation" under § 523(a)(11)); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 255–57 (6th Cir.1982); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 375–76 (5th Cir.1980); *see also Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2d Cir.1937) (Hand, J.). In this respect, however, the Seventh Circuit has not defined the level of culpability necessary to constitute a defalcation in the bankruptcy context; it has only required something more than a negligent breach of a fiduciary duty. *Meyer v. Rigdon*, 36 F.3d at 1385.

Sections 1104 and 1024(b)(4) of 29 U.S.C., among others, provide the scope of the fiduciary's obligations under ERISA. These obligations are to be broadly construed. *Martin v. National Bank of Alaska*, 828 F.Supp. 1427, 1436 (D.Alaska 1992). In particular, 29 U.S.C. § 1132(c)(1) provides:

Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title or section 1021(e)(1) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days

after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

▮ The case law makes clear that the duty to furnish complete and accurate information to plan beneficiaries upon written request is an obligation of the fiduciary, and the failure to comply is a breach of that obligation. *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993); *Anweiler v. American Elec. Pwr. Serv. Corp.*, 3 F.3d 986 (7th Cir. 1993); *Drennan v. General Motors Corp.*, 977 F.2d 246 (6th Cir.1992).

The record in this case demonstrates that the debtor did not provide the plaintiffs, after repeated requests, with the information they sought:

Beginning with Lisa Tallar (now Lisa Tallar–Kuehl) in May of 1986, the plaintiffs made a number of requests to Eisenberg for information about and distribution of their benefits under the Plan. Tallar wrote to Eisenberg requesting payment of her benefits in May and July, and Paula Miller did the same in September. Neither received a response. Thomas Kuehl made oral requests for a distribution in July and September, which Eisenberg rebuffed with a variety of explanations and excuses why the benefits could not be paid at the time in question.

In January of 1987, Kuehl began to make written requests on behalf of all the plaintiffs for Plan documents and distribution of benefits. These requests continued through September 3, 1987. Eisenberg rebuffed all the requests, with increasing hostility. The plaintiffs contended that according to the firm's practice and policy they were entitled to benefits shortly after their departures from the firm. Eisenberg responded that the plaintiffs were not entitled to any payment until they reached retirement age (59 years), and demanded that the plaintiffs produce some "statutory, or contractual, authority" for their demands for information and benefits.

*Harsch, et al. v. Eisenberg*, 956 F.2d 651, 653 (7th Cir.1992).

The debtor later testified he knew the plaintiffs were entitled to the requested information when he refused to provide it. Plaintiff's Supplemental Brief in Support, at 7 (citing to record). Thus, the debtor not only failed to perform his obligations as trustee, he *intentionally* refused to do so. In fact, the debtor's actions created the very harm 29 U.S.C. § 1132(c)(1) seeks to prevent:

"Congress' purpose in enacting the ERISA disclosure provisions was to ensure that 'the individual participant knows exactly where he stands with respect to the plan.' " One of the goals of the ERISA scheme is to provide for prompt and fair settlement. Prompt and fair settlement benefits both employees and employers.

*Winchester v. Pension Committee*, 942 F.2d 1190, 1192 (7th Cir.1991) (citations omitted). As a result of the debtor's refusal to comply with the ERISA requirements, plaintiffs were denied a prompt and fair settlement of Plan benefits.

There are an abundance of cases declaring a defalcation to be a decrease in value to a pool of assets, or the "misappropriation" of funds being held in trust for others. *E.g., Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987); *Capitol Indemnity Corp. v. Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir.1985); *Cowen & Company v. Zagar (In re Zagar)*, 136 B.R. 156 (Bank.N.D.Ohio 1992). Nevertheless, there is no reason to believe that defalcation is limited to those types of situations. Black's Law Dictionary defines a defalcation as including "the failure to meet an obligation." BLACK'S LAW DICTIONARY 417 (6th ed. 1990); *see also In re Garver*, 180 B.R. 181 (Bankr.N.D.Ohio 1995); *Blackhawk B.M.X., Inc. v. Anderson (In re Anderson)*, 64 B.R. 331, 334 (Bankr. N.D.Ill.1986) (both holding that a defalcation includes the failure to meet an obligation). In addition, two cases, *Purcell v. Janikowski (In re Janikowski)*, 60 B.R. 784 (Bankr. N.D.Ill.1986), and *Brawer v. Gelman (In re Gelman)*, 47 B.R. 735 (Bankr.S.D.Fla.1985), speak to defalcation in a different context— that of the attorney/client relationship. The

*Janikowski* court stated that "[a]lthough defalcation is usually thought of in terms of misappropriated funds, there is no reason why it should not be applied to the improper handling of any property." *Janikowski,* 60 B.R. at 789. The *Janikowski* court went on to hold that an attorney's mishandling of entrusted documents to be recorded was no less of a defalcation than an attorney's loss of a client's cause of action by allowing the statute of limitations to run. *Id.* at 790 (citing *Gelman*).

The district court held that the debtor failed to provide information to which the plaintiffs were entitled and awarded statutory damages. The debtor argues that plaintiffs' judgment against him amounts to simply a statutory violation, which cannot be deemed a judgment on a debt for defalcation. Defendant's Supplemental Brief, p. 5. The defendant further contends that because plaintiffs' "alleged damages all sprung out from their outside circumstances, beyond the principle [principal] entrusted to [him] as a fiduciary," their damages do not amount to defalcation pursuant to sec. 523(a)(4). Supplemental Brief, p. 7.

This argument is not persuasive. The judgment amount arose in connection with the breach, and the breach was a defalcation. Therefore, the issue of the debtor's defalcation is the same as was litigated in the district court, it was actually litigated and it was necessary for the result. *Klingman,* 831 F.2d at 1295.

 Similarly, the attorney fees arose on account of the defalcation and are also excepted from discharge. In *Klingman,* the court held that the recitations in a consent decree between the parties were sufficient to establish that the debt was nondischargeable under § 523(a)(4). The court went on to find that the award of attorney fees was also nondischargeable because it was ancillary to the primary nondischargeable debt and attached thereto. *Klingman,* 831 F.2d at 1296. The primary debt in the present case derived from statutory penalties for failure to provide information regarding funds contributed by each plaintiff into the plan. The original action was instituted to recover those funds which were being wrongfully withheld, and

although the funds were eventually paid over to the plaintiffs, legal fees were incurred in connection with the collection attempt. This debt, therefore, arose out of and is ancillary to the primary debt owed to the plaintiffs and, accordingly, is nondischargeable.

### CONCLUSION

For the reasons stated herein, the plaintiffs' motion for summary judgment is granted, and the judgment dated February 4, 1994, Case No. 87–C–1345 in the United States District Court for the Eastern District of Wisconsin, entered in plaintiffs' favor against the debtor, is excepted from the debtor's discharge under 11 U.S.C. § 523(a)(4). A separate order for judgment consistent with this decision will be entered.