**J. Nicholas EAVENSON, Appellant,**

v.

**Bessie RAMEY, et al., Appellees.**

**No. CIV 2:99–CV–65–WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

Nov. 10, 1999.

---

Ernest V. Harris, Harris & Liken, Athens, GA, for J. Nicholas Eavenson.

Thomas Paty Stamps, Office of Thomas P. Stamps, Atlanta, GA, for appellees.

### *ORDER*

O'KELLEY, Senior District Judge.

The dispute in the present appeal from the United States Bankruptcy Court centers around the effect of this court's decision in *Ramey v. Empire Manufacturing Co.*, No. 2:95–CV–146–WCO (N.D.Ga. June 18, 1997). The bankruptcy court concluded that the former judgment, a suit under the Employee Retirement Income Security Act ("ERISA judgment"), was entitled to preclusive effect in the present action. The bankruptcy court ruled that based on the findings in the ERISA judgment, the appellant-debtor's debt was non-dischargeable under 11 U.S.C. § 523(a)(4). The debtor appeals the bankruptcy court's application of issue preclusion.

### *BACKGROUND*

I. ERISA Judgment

A bench trial was held before this court on March 17, 1997, and the court found as follows in its findings of fact. *See Ramey v. Empire Manufacturing Co.*, No. 2:95–CV–146–WCO (N.D.Ga. June 18, 1997). Appellees-plaintiffs were employees of

Empire Manufacturing ("Empire"). Appellant-defendant Eavenson was the CEO and President of Empire. Appellees contributed a portion of their wages to the self-insured Empire Health Benefit Plan ("the plan"). Empire encountered great difficulty in paying operating expenses in late 1994, and appellant elected to pay operating expenses, payroll, and lenders rather than the claims outstanding under the plan. He did not inform Empire employees of its perilous financial condition or that the plan was essentially bankrupt and unviable. Appellant also failed to inform the employees that their medical claims were not being paid.

The court concluded that appellant was a "fiduciary" as defined under ERISA pursuant to the terms of the plan, citing *Varity Corp. v. Howe*, 516 U.S. 489, 498, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (citing 29 U.S.C. § 1002(16)) (employer is, in some circumstances, the default plan administrator), and *Connors v. Paybra Mining Co.*, 807 F.Supp. 1242, 1244–47 (S.D.W.Va.1992) (employer is fiduciary when deciding whether to deposit funds into the employee benefit plan). The court further found that appellant violated his fiduciary duties under ERISA by: 1) not informing the employees that the plan was in a precarious financial state and, in fact, was essentially bankrupt in late 1994; 2) assuring appellees that the medical bills would be paid and continuing to deduct the employees' contributions from their weekly paychecks; and 3) not separating employee contributions, deducted from their paychecks expressly for the plan, from its general funds and then using the deductions for paying operating expenses instead of paying medical claims. Appellant was held personally liable for the appellees' unpaid medical claims totaling $117,577.01 and attorneys' fees totaling $27,170.50. He did not appeal the ERISA judgment.

## II. Bankruptcy Proceeding

Appellant filed for bankruptcy on March 19, 1998. The appellees filed the present complaint to determine dischargeability on June 23, 1998. They sought to except their ERISA judgment from discharge under 11 U.S.C. § 523(a)(4) (for fraud or defalcation while acting in a fiduciary capacity) and 11 U.S.C. § 523(a)(2)(A) (for false pretenses, false representations, or actual fraud). Relying on *In re Eisenberg*, 189 B.R. 725 (Bankr.E.D.Wis.1995), and *In re Musgrove*, 187 B.R. 808 (Bankr.N.D.Ga. 1995), the bankruptcy judge ruled that under the doctrine of issue preclusion, formerly known as collateral estoppel, this court's ERISA judgment of June 18, 1997 resolved all issues under 11 U.S.C. § 523(a)(4). He determined that issue preclusion barred relitigation of this court's findings regarding appellant's status as a fiduciary and the violation of his fiduciary duties. Based on those findings, the bankruptcy judge ruled that appellant was acting as a fiduciary and committed an act of defalcation under § 523(a)(4).[1] Accordingly, the bankruptcy judge ruled for the appellees, excepting the debt owed to them from discharge in Adversary Proceeding No. G98–2033–REB. The case is now before the court for consideration of the appeal from the order of the bankruptcy court. The court heard oral argument on September 13, 1999.

## *DISCUSSION*

### I. Standard of Review

█ The district court functions as an appellate court in reviewing the bankruptcy court's decision. As this is an appeal solely from the bankruptcy court's conclusions of law, the court makes a *de novo* review of the bankruptcy court's decision. *See Schlein v. Mills*, 8 F.3d 745, 747 (11th

---

1. As the case was disposed of on those grounds, the bankruptcy court never decided whether the debt was nondischargeable on the grounds of fraud under 11 U.S.C. § 523(a)(4) or false pretenses, false representations, or actual fraud under 11 U.S.C. § 523(a)(2)(A).

Cir.1993); *Confederation Life Ins. Co. v. Beau Rivage Ltd.* 126 B.R. 632, 635–36 (N.D.Ga.1991).

## II. Analysis

■ It is well-established that collateral estoppel is applicable in a dischargeability exception proceeding in bankruptcy court. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Bilzerian,* 100 F.3d 886, 892 (11th Cir.1996); *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987) (citing *Carey Lumber Co. v. Bell,* 615 F.2d 370, 377 (5th Cir.1980) [2]). Collateral estoppel precludes relitigation of issues already litigated and determined by a valid and final judgment in another court if the following elements are present: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action; and (4) the burden of persuasion in the discharge proceeding must not be significantly heavier than the burden in the initial action. *See Bilzerian,* 100 F.3d at 892. Elements 2—4 are satisfied and are not discussed by the parties.[3] Therefore, it must be determined whether the issues at stake in the ERISA litigation are identical to those in § 523(a)(4).

■ A central purpose of the Bankruptcy Code is to provide an opportunity for certain insolvent debtors to discharge their debts and enjoy a fresh start. *See Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Quaif v. Johnson,* 4 F.3d 950, 952 (11th cir.1993). However, Congress has decided to exclude from the general policy of discharge certain categories of debts. One of these categories includes debts incurred by "fraud or defalcation while acting in a fiduciary capacity . . . ." 11 U.S.C. § 523(a)(4). Such a debt is non-dischargeable. "Congress evidently concluded that the creditors' interest in recovering full payment of [such] debts ... outweighed the debtors' interest in a complete fresh start." *Grogan,* 498 U.S. at 287, 111 S.Ct. 654.

■ For a debt to be non-dischargeable under 11 U.S.C. § 523(a)(4), the bankruptcy court must find that the debtor acted as a fiduciary and that in the course of performing his fiduciary duties, he committed an act of fraud or defalcation. The term fiduciary is not to be construed expansively but is to be limited to relationships constituting "technical trusts." *See Quaif v. Johnson,* 4 F.3d 950, 953 (11th

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**3.** The issue of appellant's status as a fiduciary and the issue of whether he violated his fiduciary duties were actually litigated in the ERISA action, there was a decision on the issues, and that decision was critical and necessary to the judgment. Indeed, those issues were the reason for the ERISA judgment. If the issues had been decided differently, the judgment would have gone for appellant instead of appellees.

As for the burden of persuasion, it is the same in dischargeability proceedings as it is in ERISA proceedings. *Compare Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that the "standard of proof for the dischargeability exceptions" in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard) *with F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250 (2d Cir.1987) (affirming jury instruction requiring preponderance of the evidence standard for determination of fiduciary status under ERISA) and *Mid–Atlantic Perfusion Assoc., Inc. v. Professional Ass'n Consulting Services, Inc.,* 1994 WL 418990 (E.D.Pa.), *aff'd,* 60 F.3d 816 (3d Cir.1995) (requiring a showing by preponderance of evidence that defendant was a fiduciary under ERISA). The preponderance of the evidence standard is usually applied in monetary disputes between private parties and is the customary standard in civil litigation. *See Sullivan v. LTV Aerospace and Defense Co.,* 82 F.3d 1251, 1260 (2d Cir.1996). There is nothing to suggest that the court applied any other standard than the usual preponderance of the evidence burden in the ERISA litigation. Thus, the fourth requirement is also met.

Cir.1993) (citing *Chapman v. Forsyth*, 43 U.S. 202, 2 How. 202, 11 L.Ed. 236 (1844); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) [4]). Although courts have struggled with the concept of technical trusts, a number of principles are consistently applied. *See id.*

▪ First, a technical trust relationship must exist prior to the act creating the debt and without reference to that act. *See In re Cross*, 666 F.2d 873, 881 (5th Cir. Unit B 1982) [5]; *In re Angelle*, 610 F.2d 1335 (5th Cir.1980). In other words, the debtor must owe a fiduciary duty to his creditors which pre-existed the act creating the debt. It is insufficient if the act which creates the debt simultaneously creates the trust relationship. *Quaif*, 4 F.3d at 953. Second, the fiduciary duties must be specifically set forth so that a trust relationship is expressly and clearly imposed. *See In re Pedrazzini*, 644 F.2d 756, 759 (9th Cir.1981); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 374 (5th Cir.1980); *In re Lipke*, 54 B.R. 704, 706 (Bankr. W.D.Wis.1985). Third, some cases have also found that a separately identifiable res is essential to a trust. *See In re Librandi*, 183 B.R. 379, 383 (M.D.Pa.1995); *In re Eichelberger*, 100 B.R. 861, 865 (Bankr.S.D.Tex.1989); *In re Kelley*, 84 B.R. 225, 230 (Bankr.M.D.Fla.1988); *Matter of McCraney*, 63 B.R. 64, 67 (Bankr. N.D.Ala.1986).

In *Quaif v. Johnson*, 4 F.3d 950 (11th Cir.1993), the Eleventh Circuit considered how statutorily created fiduciary duties fit into this equation. The court held that a Georgia statute requiring insurance agents to promptly account for and remit payments of funds to the insurer and to abstain from co-mingling funds with operating or personal accounts did create fiduciary duties sufficient to create a technical trust. 4 F.3d at 954. The court found that the requirement that fiduciary duties exist before and apart from the act giving rise to the debt applies to statutorily created "trusts" as well as traditional technical trusts. *See id.; In re Angelle*, 610 F.2d at 1340. If the statute triggers the fiduciary duty upon the happening of the act which incurs the debt, it is insufficient.

It is not entirely clear whether a separately identifiable res is required for a statutory trust. Although *Quaif* addressed this issue, it did not definitively articulate whether it is an essential element. 4 F.3d at 954. The court held that it was sufficient in that case that the Georgia insurance statute required the premiums to be separated from other types of funds although they could be kept in a common premium account as long as there were adequate records of the sources of the funds. *Id.*

▪ Does ERISA create fiduciary duties sufficient to create a "technical trust?" The lower courts are split. *Compare In re Coleman*, 231 B.R. 393 (Bankr. S.D.Ga.1999) (finding an ERISA fiduciary qualifies for discharge exception), *In re Eisenberg*, 189 B.R. 725 (Bankr.E.D.Wis. 1995) (finding an ERISA fiduciary qualifies for discharge exception), and *In re Musgrove*, 187 B.R. 808 (Bankr.N.D.Ga. 1995) (finding an ERISA fiduciary qualifies for discharge exception), *with Bowman v. Hollander*, 1992 WL 373172 (N.D.Ohio 1992) (finding ERISA fiduciary duties insufficient to trigger § 523(a)(4) discharge exception), *In re Bryant*, 73 B.R. 956 (Bankr.N.D.Tex.1987) (finding a fiduciary under ERISA is not a fiduciary for bankruptcy discharge purposes), and *In re Nielsen*, 53 B.R. 289 (Bankr.N.D.Ala. 1985) (finding a fiduciary under ERISA is not a fiduciary for bankruptcy discharge

---

**4.** The Supreme Court has not spoken on the issue of technical trusts since this 1934 decision.

**5.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), the Eleventh Circuit adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

purposes). The court agrees with the line of reasoning finding that ERISA sufficiently creates a technical trust.

ERISA statutorily satisfies the elements of a technical trust under § 523(a)(4). It identifies the fiduciary and his or her specific fiduciary duties. 29 U.S.C. § 1002 provides that

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA requires such a fiduciary to, *inter alia*, provide for continuation coverage, provide a detailed plan description to all employee-beneficiaries, notify each employee-beneficiary of any material changes, and act with the care, skill, prudence, and diligence of a prudent man acting in a like capacity. *See* 29 U.S.C. §§ 1022, 1024(b)(1), 1104(a)(1)(B), 1161(a).[6] These fiduciary duties draw much of their content from the common law of trusts, the law which governed most benefit plans before ERISA's enactment. *See Varity Corp. v. Howe,* 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (citations omitted). Additionally, these duties attach to the fiduciary at the creation of an ERISA plan. Thus, the requirement that a "technical trust" arise prior to and without regard to the breach of given fiduciary duties is satisfied. Finally, the res of the trust under ERISA is easily identifiable; it is the employee welfare benefit plan itself.

■ Appellant takes issue with the fact that he was not required to keep the employees' withheld wages in a separate fund. He argues, therefore, that no trust res was

established and he is not a fiduciary under § 523(a)(4). This argument is unavailing. As the Eleventh Circuit stated, "the court does not believe that a separation of ... funds into distinct bank accounts is an essential requirement of a trust." *Quaif v. Johnson,* 4 F.3d 950, 954 (11th Cir.1993). Here it is sufficient that the employee benefit plan was separately and clearly identified in the statute as the res, and appellant was entrusted with managing that res for the benefit of the participating employees. *See* 29 U.S.C. § 1104(a)(1) (an ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.").

■ Thus, the court concludes that ERISA sufficiently creates fiduciary duties such that the elements of a technical trust are satisfied. An ERISA fiduciary, under the obligation to satisfy his corresponding fiduciary duties, therefore acts in a "fiduciary capacity" under § 523(a)(4). Consequently, the final judgment concluding that appellant was a fiduciary under ERISA is entitled to preclusive effect that he was acting in a fiduciary capacity under § 523(a)(4).

■ Finding that appellant was acting in a fiduciary capacity, the court now turns to the question of whether he committed an "act of defalcation" by violating his ERISA fiduciary duties. Noting the uncertainty surrounding the meaning of defalcation, the Eleventh Circuit accredited Judge Learned Hand's analysis of the term in *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937). *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993).

Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a 'defalcation' for purposes of this statute does not have to

---

**6.** Appellant Eavenson admitted he was "functional fiduciary" at the ERISA bench trial and that his duties included deciding if and when to pay medical providers for duly adminis-

tered claims of employees. *See Ramey v. Empire Manufacturing Co.,* No. 2:95–CV–146–WCO at 9 (N.D.Ga. June 18, 1997).

rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.' Some cases have read the term even more broadly, stating that even a purely innocent party can be deemed to have committed a defalcation for purposes of § 523(a)(4).

*Id.* (citations omitted). The court went on to implicitly hold that although an act of defalcation does not have to rise to the level of fraud, it must be intentional; negligence or innocent mistake may not be enough. *Id.* ("The record ... indicates that [the alleged act of defalcation] ... was far more than an innocent mistake or even negligence. [The debtor] does not seriously contest that the transfer was intentional. Therefore, the court must conclude that the failure to remit premiums ... constituted a defalcation within the meaning of § 523(a)(4).").

The question then becomes whether appellant's breach of his ERISA duties, as found in the court's ERISA judgment, constitutes defalcation. If it does, then it is entitled to preclusive effect. In finding that appellant violated his ERISA fiduciary duties, the court found the following facts crucial to its decision:

1) ... defendant Eavenson did not inform the employees that the Plan was in a precarious financial state and, in fact, was essentially bankrupt in late 1994;

2) ... defendant Eavenson assured plaintiffs that the medical bills would be paid and still deducted the employees' contribution from their weekly paychecks; and

3) ... defendant Eavenson did not separate employee contributions, deducted from their paychecks expressly for the Plan, from its general funds used towards paying operating expenses.

*Ramey v. Empire Manufacturing Co.,* No. 2:95–CV–146–WCO at 11–12 (N.D.Ga. June 18, 1997). The court also found that although appellant never affirmatively misled his employees, his silence achieved the same result. *Id.* at 12.

Appellant claims that his conduct was "innocent" and involved no wrongdoing. Br. Appellant, p. 13–14. Instead, he maintains that he was an "innocent debtor doing the best he could" who at the end of the day could not pay all of his corporation's bills, including medical claims. *Id.* at 14. The court is not persuaded. Simply failing to pay medical claims was not how appellant violated his fiduciary duties. Appellant failed to inform employees of his knowledge regarding Empire's perilous financial condition and the fact that the plan was essentially bankrupt; he failed to inform the employees of his knowledge that their medical claims were not being paid; and he continued to permit the taking of deductions from employees' wages in spite of his aforementioned knowledge. *Ramey v. Empire Manufacturing Co.,* No. 2:95–CV–146–WCO at 12 (N.D.Ga. June 18, 1997). His conduct violated his fiduciary duties under ERISA and was carried out with knowledge and intent. Hence, the court finds that appellant's conduct amounted to an act of defalcation. The bankruptcy court did not err in concluding that the court's findings in the ERISA judgment were entitled to preclusive effect in this regard.

The court notes appellant's argument that even if he was acting in a fiduciary capacity and even if he did commit an act of defalcation, the debt is nonetheless dischargeable because it did not arise out of nor was it the result of the act of defalcation. Relying on *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.,* 828 F.2d 710 (11th Cir.1987), he argues that the debt arose while he was acting in his corporate capacity rather than in his fiduciary capacity. The Eleventh Circuit did hold that an employer acts in his "corporate" status rather than his "fiduciary" status when determining whether to use funds to pay operating expenses or medical insurance premiums. *Id.* at 714. However, as stated above, the decision to pay operating expenses rather than claims was not the basis of the court's finding that appellant violated his fiduciary

duties. Appellant's violations amounted to an act of defalcation as a matter of law, and his debt arises from this defalcation. Thus, appellant's argument is rejected.

■ Lastly, appellant argues that even if the court finds that he committed an act of defalcation while acting in a fiduciary capacity and the debt arose from that defalcation, the bankruptcy court has the obligation to hear evidence and make a factual determination regarding the specific date after which appellant violated his fiduciary duties and the portion of claims which arose after that date. Br. Appellant, p. 15. He argues that many medical claims arose months before it was known that Empire may not have been able to pay the claims. *Id.* For example, "if the [appellant] became aware on January 1, 1995 that Empire could not pay claims without a merger, he was under a duty to disclose this fact at that point. If $75,-000.00 of the medical claims arose after that date, the breach of fiduciary duty may have caused that amount of loss to the [appellees]. However, the $42,577.01 that already existed prior to January 1, 1995 did not arise as the result of a defalcation while acting in a fiduciary capacity and that amount of the obligation, at a minimum, is dischargeable." *Id.* at 15–16.

Despite appellant's engaging argument, he is essentially asking to relitigate facts which have already been decided in the final ERISA judgment, precisely what issue preclusion prohibits. It has already been determined that appellant is liable for unpaid claims totaling $117,577.01 as a result of violating his fiduciary duties under ERISA. Thus, this amount arose as a result of his defalcation. There is no justification to relitigate that fact.

## CONCLUSION

In summary, ERISA establishes the elements of a technical trust in statutory form, and thus one acting as a fiduciary under ERISA is also acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4). Additionally, the facts found in the ERISA judgment which constituted a violation of appellant's ERISA fiduciary duties also constituted defalcation under § 523(a)(4) as a matter of law. Finally, appellant's debt arose as a result of the defalcation committed while acting in his fiduciary capacity. Accordingly, the bankruptcy judge did not err in applying the doctrine of issue preclusion and finding that the elements of 11 U.S.C. § 523(a)(4) were met, thereby ruling that the ERISA judgment was non-dischargeable.[7]

7. Both parties and the bankruptcy judge referred to the ERISA judgment generally. No distinction has been made between the primary judgment and attorney's fees. Appellees' initial complaint in the bankruptcy court requested that the ERISA judgment be determined as non-dischargeable and outlined the judgment as follows: "[j]udgment ... in the amount of $117,577.01, plus awarded attorneys' fees in the amount of $27,170.50. Judgment was thereupon entered, plus interest at the legal rate of 5.88% annum until paid ...." Compl. Determine Dischargeability Debt, ¶¶ 12–14. The bankruptcy court "ORDERED that the obligation in dispute herein is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and judgment on Plaintiffs' complaint shall be entered in favor of Plaintiffs and against Defendant–Debtor." *In re Eaveson,* No. G98–20615–REB, Adversary Proceeding No. 98–2033 (Bankr.N.D.Ga. April 15, 1999). The court interprets this to mean that the entire amount of the judgment, $144,-747.51 plus interest until paid, was found to be non-dischargeable. Appellant's brief makes reference to the debt in question as "the $117,577.01 debt" and then as the "$117,577.01 in unpaid medical claims ...." Br. Appellant, p. 8 & 16. The court finds that this does not sufficiently raise the issue that attorney's fees should be dischargeable. *See* FED. R. APP. P. 28(a). However, the court recognizes that the law is unsettled regarding the parameters of when attorney's fees are dischargeable. *See Klingman v. Levinson,* 831 F.2d 1292, 1296–97 (7th Cir.1987) ("Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt.") (citations omitted); *accord Stokes v. Vierra,* 185 B.R. 341, 345 (N.D.Cal. 1995), and *In re Eisenberg,* 189 B.R. 725 (Bankr.E.D.Wis.1995) ("The primary debt in the present [ERISA] case derived from statutory penalties for failure to provide information regarding funds contributed by each plaintiff into the plan. The original action

The order of the bankruptcy court is hereby **AFFIRMED.**

was instituted to recover those funds which were being wrongfully withheld ... legal fees were incurred in connection with the collection attempt. This debt, therefore, arose out of and is ancillary to the primary debt owed ... and ... is nondischargeable."); *but see In re Capps*, 193 B.R. 955, 966 n. 7 (Bankr. N.D.Ala.1995) (finding that attorney's fees do not constitute a debt for fraud or defalcation while acting in a fiduciary capacity, especially where debtor has not engaged in any fraudulent activity); and *TranSouth Financial Corp. of Florida v. Johnson*, 931 F.2d 1505 (11th Cir.1991) (primary debt on a contract was procured by fraud, attorney's fees which the creditor was entitled to *under contract* were non-dischargeable). As the issue is not before the court for consideration, the court passes no judgment on it but affirms the bankruptcy court's judgment as reasonably interpreted to except the entire judgment plus interest from discharge.