In re David R. WESTON, Debtor.

Mary Weaver, Plaintiff,

v.

David R. Weston, Defendant.

Bankruptcy No. 02–13868–MWV.
Adversary No. 03–1287–MWV.

United States Bankruptcy Court,
D. New Hampshire.

March 26, 2004.

Peter D. Anderson, McLane, Graf, Raulerson & Middleton, P.A., Manchester, NH, for Plaintiff.

Keri J. Marshall, Marshall Law, PLLC, East Kingston, NH, for Debtor/Defendant.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it Plaintiff Mary Weaver's ("Plaintiff") Motion for Summary Judgment seeking to except a judgment debt, which includes costs and attorney's fees, from discharge pursuant to § 523(a)(4) of the Bankruptcy Code.[1] The Court held a hearing on the motion on February 9, 2004, and took this matter under submission. For the reasons set out below, the Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

Prior to April 7, 1995, the Plaintiff was employed by Complex Medical Products, Inc. ("Complex"), and Complex provided her medical and health benefits under the terms of the self-funded plan covered under the Employee Retirement Income Se-

---

1. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

curity Act ("ERISA"), 29 U.S.C. § 1002, *et seq.* The plan was administered and managed by Great West Life and Annuity Insurance Company ("Great West") since May 1993, and the Plaintiff contributed to the plan through payroll deductions.

In October 1994, the Plaintiff underwent carotid artery surgery in order to avoid a stroke. Thereafter, she paid all of her deductibles and co-payments to her medical care providers, as required under the terms of the plan, but she was denied reimbursement for her medical costs because Complex failed to adequately fund the plan. The Plaintiff was never informed that Complex had failed to make payments to the Great West prior to this incident. The Plaintiff alleges that the Defendant, David Weston ("Defendant"), was the plan's acting administrator when she incurred the medical expenses. Despite the Defendant's assurances, the Plaintiff's medical bills were not paid.

In April 1995, the Plaintiff brought an action in the United States District Court for the District of New Hampshire ("District Court") under the provisions of ERISA against the Defendant, among others, seeking compensation for healthcare expenses she incurred in reliance upon the terms of the plan and attorney's fees and costs. The District Court awarded the Plaintiff partial summary judgment declaring that the Defendant was a fiduciary under ERISA and that he breached his fiduciary duties. At the conclusion of that litigation, the District Court entered judgment in favor of the Plaintiff with respect to her claims against the Defendant based on § 1132(a)(3) of ERISA, and the Defendant and Robert Weston, who was the president of Complex, are adjudged to be jointly and severally liable to the Plaintiff for costs and attorney's fees incurred in the course of litigation.

On December 12, 2002, the Defendant filed a Chapter 7 bankruptcy petition in this Court listing the Plaintiff's claims in the amount of $62,000 on Schedule F. On March 17, 2003, the Plaintiff filed a Complaint to Determine Dischargeability of Debt seeking to except from discharge the judgment debt as a debt for fraud or defalcation while acting in a fiduciary capacity pursuant to § 523(a)(4). The complaint was based upon the District Court judgment, which found that the Defendant was a fiduciary of the plan and that he breached his fiduciary duty in failing to notify the Plaintiff that healthcare benefits were jeopardized. The Defendant timely filed a response objecting to the requested relief. On December 1, 2003, the Plaintiff filed the instant motion, and the Defendant filed his objection to the motion.

### DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 38 (1st Cir.1993)(quoting *United States v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Courts faced with a motion for summary judgment should read the record

"in the light most flattering to the nonmovant and indulge all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

The Plaintiff argues that the doctrine of collateral estoppel precludes relitigation of her complaint in this Court because the issues have been already litigated and determined by a final judgment in the District Court. The principles of collateral estoppel, or issue preclusion, apply in discharge exception proceedings under the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Federal principles of collateral estoppel apply to prior judgments that are rendered by a federal court. *Murdock v. Ute Indian Tribe,* 975 F.2d 683, 687 (10th Cir.1992). In order for collateral estoppel to apply, four requirements must be met. These requirements are: 1) the issue sought to be precluded must be the same as that involved in a prior action; 2) the issue must have been actually litigated; 3) the determination of the issue must have been essential to the final judgment; and 4) the party against whom estoppel was invoked must be fully represented in the prior action. *In re Tracey,* 250 B.R. 468, 471 (Bankr.D.N.H.2000) (citing *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir. 1987)).

The Court finds that all four of the elements are satisfied here. A debt is excepted from discharge pursuant to § 523(a)(4) when it is the result of fraud or defalcation while acting in a fiduciary capacity. The definition of "fiduciary" is limited to a relationship involving either an express or technical trust and not trusts that are imposed by law as a remedy. *See In re Swanson,* 231 B.R. 145, 148 (Bankr. D.N.H.1999); *In re Runge,* 226 B.R. 298, 304 (Bankr.D.N.H.1998); *In re Reeves,* 124 B.R. 5, 7 (Bankr.D.N.H.1990). The Court agrees with the line of cases finding that ERISA creates fiduciary duties sufficient to create a technical trust. *See In re Eavenson v. Ramey,* 243 B.R. 160 (N.D.Ga.1999) (finding that ERISA creates a pre-existing technical trust, of the kind required under dischargeability exception); *In re Eisenberg,* 189 B.R. 725 (Bankr. E.D.Wis.1995) (finding that an ERISA fiduciary qualifies for discharge exception). An ERISA fiduciary "must discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Thus, the District Court's conclusion that the Defendant was an ERISA fiduciary, under the obligation to discharge his fiduciary duties, satisfies the requirement that the Defendant was acting "in a fiduciary capacity" under § 523(a)(4).

The issues of whether the Defendant was a fiduciary and whether he breached his fiduciary duties were actually litigated in the District court and the District Court determined that the Defendant was a fiduciary because he was the acting plan administrator during the relevant period and that the Defendant breached his fiduciary duties by failing to notify the Plaintiff that the plan was in danger of being terminated. The determination of the issues must have been essential to the final judgment in the District Court.[2] Indeed, those issues were the reason for the ERISA judgment. If the District Court had determined the issue the other way, the judgment would have been awarded in favor of the Defendant instead of the Plaintiff.

---

**2.** The Court notes that the Defendant has not contested the validity or finality of the District

Court judgment against him.

■ As for the fourth element, the Defendant argues that he was not "fully represented in the prior action" because he appeared *pro se* in the District Court action.[3] The Court rejects the Defendant's argument that *"pro se* litigant" is not "fully represented." There is no evidence that the Defendant did not have a full and fair opportunity to litigate the issues in the prior proceedings. *See Nelson v. Tsamasfyros (In re Tsamasfyros),* 940 F.2d 605, 607 (10th Cir.1991) (expressly rejecting the argument that collateral estoppel is not applicable to *pro se* litigant).

■ As explained above, the only question left for the debt to be nondischargeable under § 523(a)(4), is whether the judgment debt, which includes costs and attorney's fees, was caused by the Defendant's act of defalcation. The First Circuit recently set a standard to measure when a breach of fiduciary duty is a "defalcation." *See In re Baylis,* 313 F.3d 9 (1st Cir.2002). The *Baylis* Court found that "a defalcation requires some degree of fault, closer to fraud, without the necessity of meeting a strict specific intent requirement." *Id.* 313 F.3d at 18–9. Employing analogy to the law of the securities, the *Baylis* Court viewed:

> The mental state required for defalcation is akin to the level of recklessness required for scienter. It is more than the mere conscious taking of risk associated with the usual torts standard of recklessness. *See Black's Law Dictionary, supra,* at 1276–77. Instead, defalcation requires something close to a showing of extreme recklessness.

*Id.* 313 F.3d at 22–23.

■ The Plaintiff argues that the Defendant, as a plan administrator, knew that the plan was in danger of being terminated and that his failure to inform the Plaintiff of the danger constitutes a defalcation under § 523(a)(4). The Defendant denies that he had such knowledge or information. The Court is not convinced that the Defendant's conduct constitutes a defalcation. The Court notes that the District Court was not satisfied by a preponderance of the evidence that the Defendant had actual knowledge of the plan being in jeopardy prior to the time of Plaintiff's surgery in October 1994. The Defendant was clearly negligent by failing to undertake reasonable efforts to keep himself apprized of the status of the plan. However, under the *Baylis* standard, mere negligence is not sufficient to find a defalcation. Therefore, the Court denies the motion to the extent it requests that the Defendant's act be declared a defalcation.

### CONCLUSION

The Court grants the Plaintiff's motion for summary judgment in part to the extent that the District Court judgment established that the Defendant was acting in a fiduciary capacity. The Court denies the Plaintiff's motion to the extent that it requests the Court to declare that the Defendant's debt arose as a result of defalcation under § 523(a)(4) as a matter of law. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

---

**3.** The Defendant raised this issue in his answer to the Plaintiff's complaint, but not in his objection to the instant motion. However, because the Defendant asserted this argument at the hearing for the instant motion, the Court considers this argument.