In re Jerry F. HATLEY, Debtor.

Donald SMOLEN, Plaintiff,

v.

Jerry F. HATLEY, Defendant.

Bankruptcy No. 97–00985–M.
Adversary No. 97–0204–M.

United States Bankruptcy Court,
N.D. Oklahoma.

June 16, 1998.

## *MEMORANDUM OPINION*

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Complaint by Donald Smolen ("Smolen" or ."Plaintiff") against Jerry F. Hatley, Debtor herein ("Hatley" or "Defendant" or "Debtor") filed on June 9, 1997. Hatley filed his Answer on July 1, 1997. The matter was tried to the Court on March 19, 1998. Hatley appeared by and through his attorney, H. Gregory Maddux. Smolen appeared by and through his attorney, Mark A. Craige. At the trial, the Court received documentary and testimonial evidence, and the parties also submitted their Stipulation of Facts (the "Stipulation"). Upon conclusion of the trial, the Court permitted the parties to submit post-trial briefs. Smolen submitted his Post–Trial Brief (the "Brief") on April 10, 1998. Hatley submitted Defendant's Post–Trial Brief (the "Response") on April 27, 1998, and Smolen submitted Plaintiff's Reply to Defendant's Post–Trial Brief (the "Reply") on May 4, 1998. At that point in time the matter was taken under advisement. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28. U.S.C. § 157(b)(2)(I).

### Burden of Proof

 The burden of proof in this action is upon Smolen to establish the elements under 11 U.S.C. § 523(a)(4) by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are to be narrowly construed in favor of the debtor. *See In re Black,* 787 F.2d 503, 505 (10th Cir.1986).

### Findings of Fact

In early 1994, Hatley and Smolen entered into discussions regarding the purchase of used airplanes in need of repair for the purposes of refurbishing and reselling the same. Smolen and third party lenders were to be the source of funds for the purchase and repair of the planes. Hatley, a pilot with experience in the aviation field, was to locate suitable airplanes and oversee their repair and eventual resale. In other words, Hatley was to provide the aviation skill to repair the planes and the marketing expertise necessary to sell them, and Smolen was to be the source of operating capital. Pursuant to the parties' agreement, the proceeds from the sale of a plane would first be used to pay expenses related to the sale, including reimbursement of any funds advanced by Smolen or Hatley, with any profit or loss to be divided equally between Smolen and Hatley.

On April 12, 1994, Hatley formed a corporation called Casa Blanca Aviation, Inc. ("Casa Blanca"). There were never any shares of stock in Casa Blanca issued, initial or annual shareholder meetings conducted, initial or annual directors meetings held, directors or officers elected, or corporate books or other accounting records kept. The parties agree that the business was never run as a corporation. *See Response* at p. 2; *see Reply* at p. 1. The primary reason Casa Blanca was formed was in order to obtain a state tax permit for buying and selling planes. Such a permit would allow Smolen and Hatley to avoid paying a state levied transfer tax on the purchase and sale of planes. The two planes involved in this dispute were titled in the name of the corporation, and the state tax license for buying and selling the subject plane was held in the name of the corporation. A franchise tax return was prepared by the corporation.

Hatley and Smolen borrowed $45,000.00 from United Bank in Oklahoma City, Oklahoma, on May 23, 1994. The proceeds from this loan were used to purchase the first

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (West 1998).

plane, a Cessna 421 (the "421"). The 421 was then refurbished and sold for $48,000.00 cash and a 1974 Piper Aztec plane (the "Aztec") in trade. The Aztec was eventually refurbished and sold for $75,000.00 cash on or about June 11, 1995. Total receipts from the sale of the 421 and the Aztec (the "Planes") equaled $125,000.00.[2] No other planes were purchased or sold. All funds used to purchase the Planes and to pay the costs of repair and refurbishment came from the United Bank loan, the sales of the Planes or from Smolen personally.

Proceeds from the sale of the Planes in the total amount of $125,000.00 were deposited into Hatley's personal bank account. Smolen knew that deposits and payments with respect to the Planes were to be made to and from Hatley's personal account. From said account, Hatley paid Smolen, vendors and United Bank a total of $80,395.75.[3] Hatley spent the remaining $44,604.28 of the proceeds from the Planes on his personal affairs. The parties have stipulated that the debt owed to Smolen totals $44,604.28 (the "Debt"). No payments were ever made on the Debt. On or about March 1, 1996, Hatley prepared and executed a promissory note to Smolen in the sum of $57,809.69, which Smolen testified he never accepted.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

Smolen seeks to have the debt owed to him by Hatley declared nondischargeable under

**2.** The parties stipulated that the gross receipts from the sale of the Planes totaled $125,000, notwithstanding that they also stipulated to the sale price of $48,000 for the 421, and $75,000 for the Aztec, which total $123,000. *See Adversary Docket No. 24* at p. 2. Given the ruling of the Court, and the fact that the parties stipulated to the amount owed by Hatley to Smolen, the inconsistency as to the amount received for the Planes is of no consequence.

**3.** The claims of United Bank and the vendors were paid in full. The United Bank loan was repaid in part from the sale of the 421; the remaining balance of principal and interest was paid by Smolen. Hatley did not use any of his own money to pay vendors, United Bank or Smolen.

§ 523(a)(4)[4] of the United States Bankruptcy Code, which provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

§ 523(a)(4). To determine whether the debt owed to Smolen can be excepted from discharge, the Court needs to address various issues raised by the parties.

*Legal Nature of Business Relationship between Hatley and Smolen*

■ One of the issues raised at the Trial was whether the business operated by Smolen and Hatley should be treated as a corporation or a partnership. In their post-trial briefs, the parties have subsequently agreed that the business venture at issue was never operated as a corporation but that the corporation was merely formed for tax purposes. *See Response* at p. 2; *see Reply* at p. 1. However, the parties do not agree to whether their business arrangement was a partnership or a joint venture. Hatley argues that the business was a joint venture, while Smolen contends that it was a partnership. The Court finds for purposes of this decision that a partnership existed between Smolen and Hatley.

■ The business relationship between Smolen and Hatley had all the characteristics of a partnership. A partnership under Okla-

**4.** The Complaint also requested an exception from discharge under § 523(a)(2)(A), and the applicability of this section was raised in the pre-trial order. However, no evidence or argument regarding § 523(a)(2)(A) was submitted at the Trial. The Post-Trial briefs of both Hatley and Smolen confined their arguments to the issue of whether the claim of Smolen against Hatley was dischargeable under § 523(a)(4). As a result of the manner in which this case has been presented, the Court will consider the issue of exception to discharge under § 523(a)(2)(A) as abandoned by the parties and unsupported by the evidence presented and will not further consider it in its opinion.

homa law "... is an association of two or more persons to carry on as co-owners of a business for profit." Okla.Stat. tit. 54, § 206 (West 1991). Case law has established the necessary elements for a partnership: "(a) an intent to form the same; (b) generally, a participation in both profits and losses; and (c) such a community of interest, as far as third persons are concerned, as enables each party to make contracts, manage the business, and dispose of the property." *Dowdy v. Clausewitz*, 361 P.2d 288, 290 (Okla.1961). In this case, Smolen and Hatley had an oral agreement to enter into a business that would buy, refurbish and sell airplanes; after repayment of expenses, losses and profits were to be split equally; and both Hatley and Smolen participated in and operated the business with Hatley running the day-to-day operations and Smolen providing the financial backing. Therefore, the Court concludes that Smolen and Hatley were partners.[5]

*Fiduciary Duty*

Two main elements must be established to except a debt from discharge under § 523(a)(4): (1) there must be a showing of defalcation; and (2) the debtor must have been acting in a fiduciary capacity. *See* 11 U.S.C. § 523(a)(4).[6] The Complaint filed by Smolen, alleges that Hatley as a fiduciary to Smolen kept funds that belonged to the partnership, and therefore perpetrated defalcation while acting in a fiduciary capacity. *See Adversary Docket No. 1* at p. 2. The crux of the matter is whether Hatley owed the fiduciary duty to Smolen that is contemplated under § 523(a)(4).

■ Section 523(a)(4) clearly qualifies the term "defalcation" by "[t]he phrase 'while acting in a fiduciary capacity.' " *See* 4 King et. al., Collier on Bankruptcy ¶ 523.10[1][c] (West 1998). Therefore, "[t]here is no need to consider whether a debtor has committed 'fraud or defalcation' unless it is first determined that debtor was 'acting in a fiduciary capacity.' " *In re Turner*, 134 B.R. 646, 648

(Bankr.N.D.Okla.1991). "The existence of the fiduciary relationship is a threshold issue to be determined under § 523(a)(4)." *In re Hogue*, 221 B.R. 786 (Bankr.N.D.Okla. May 22, 1998); *see also In re Storie*, 216 B.R. 283, 286 (10th Cir. BAP 1997). Plaintiff argues that because Smolen and Hatley were partners, Hatley owed the kind of fiduciary duty to Smolen which would make the debt at issue nondischargeable under § 523(a)(4). However, courts in this circuit have held differently.

The Tenth Circuit has taken a very narrow view of the concept of fiduciary duty under § 523(a)(4):

> Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor.... Thus an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4).... Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, ... nor an inequality between the parties' knowledge or bargaining power is sufficient ... to establish a fiduciary relationship for purposes of dischargeability. "Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy."

*In re Young*, 91 F.3d 1367, 1372 (10th Cir. 1996) (citations omitted) (hereafter "*Young*"). The question of whether a relationship between parties is fiduciary in nature for purposes of § 523(a)(4) appears to require consideration of state as well as federal law. *See In re Turner*, 134 B.R. at 649; *see also In re Black*, 787 F.2d 503, 506 (10th Cir.1986) ("... state law is an important factor in determining when a trust relationship exists."). The Bankruptcy Appellate Panel for this Circuit has expressly considered Oklahoma statutory and common law,

---

5. The Court finds that it is inconsequential whether the business was a joint venture or a partnership, since partners and joint venturers are held to the same duty in their dealings with one another. *Oklahoma Co. v. O'Neil*, 440 P.2d 978, 984 (Okla.1968).

6. The Plaintiff did not allege fraud, embezzlement or larceny under § 523(a)(4), and therefore the Court will not address those issues.

and has answered the question in the negative:

> Courts of the Tenth Circuit have uniformly held that the UPA [Uniform Partnership Act] does not create the kind of fiduciary relationship required by § 523(a)(4). *Novak*, 97 B.R. at 59 (UPA only creates a trust after the partners derive profits without the consent of the partnership, and the trust created is therefore that sort of trust ex maleficio which is not included within the purview of § 523(a)(4)); *Beebe v. Schwenn (In re Schwenn)*, 126 B.R. 351 (D.Colo.1991) (UPA does not create fiduciary relationship); *Susi v.. Mailath (In re Mailath)*, 108 B.R. 290 (Bankr.N.D.Okla. 1989) (Oklahoma statutory law governing general partners does not create the requisite trust relationship); *In re Weiner*, 95 B.R. 204 (Bankr.D.Kan.1989) (UPA does not create fiduciary relationship); *see also Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986).

*In re Seay*, 215 B.R. 780, 786 n. 4 (10th Cir. BAP 1997) (hereafter *"Seay"*). The *Seay* court found that neither the Oklahoma Uniform Partnership Act[7] ("OUPA") nor Oklahoma case law[8] impose the kind of fiduciary duty on partners or joint venturers required to satisfy § 523(a)(4). *Id.* at 786–787.

■ This Court is bound by the view the Tenth Circuit has taken of fiduciary duty under § 523(a)(4) in the *Young* case. As in *Seay*, the partners in this case did not have an express, written agreement that could establish the necessary fiduciary relationship. Therefore, the only argument Smolen could, and did, rely upon to establish a fiduciary duty owed to him by Hatley is Oklahoma statutory or case law. However, as stated above, the law in this circuit based upon *Young* and its progeny is that neither Oklahoma common law nor Oklahoma statutory law, i.e., the OUPA, imposes the fiduciary duty required under § 523(a)(4). Therefore, absent a finding of a fiduciary duty imposed upon Hatley sufficient to satisfy the require-

ments of § 523(a)(4), the Court's inquiry can proceed no further. The Debt owed to Smolen by Hatley is dischargeable.

*Defalcation*

Since the Court did not find that Hatley owed Smolen the kind of fiduciary duty required by § 523(a)(4), the Court does not reach the issue of defalcation.

*Accord and Satisfaction*

The parties have also briefed the issue of whether the issuance of the Note by Hatley to Smolen constitutes an accord and satisfaction between them, such as to render § 523(a)(4) inapplicable to the facts at bar. Having determined that the Debt owed to Smolen by Hatley is dischargeable if there were no accord and satisfaction, the Court need not reach this issue.

**Conclusion**

The debt owed by Hatley to Smolen is dischargeable.

---

7. The Oklahoma Uniform Partnership Act is found at Okla.Stat.Ann. tit. 54, § 201 *et. seq.* (West 1991 & Supp.1998).

8. The *Seay* Court acknowledges that Oklahoma state courts have established a general policy that acknowledges the existence of a fiduciary

duty between joint venturers or partners, but finds that policy inadequate to establish the kind of fiduciary duty necessary to meet the stringent requirements established by the Tenth Circuit under § 523(a)(4). *In re Seay*, 215 B.R. at 787.