# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 01-6034MN

_____

| | | |
|---|---|---|
| In re:  Gholah Hossein Shahrokhi, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| John K. Jafarpour, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellant, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Gholah Hossein Shahrokhi, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: August 28, 2001
Filed: September 18, 2001
_____

Before KOGER, Chief Judge, WILLIAM A. HILL and SCHERMER, Bankruptcy
Judges.

_____

WILLIAM A. HILL, Bankruptcy Judge.

John K. Jafarpour appeals from a bankruptcy court[1] order entered in favor of Gholah Hossein Shahrokhi. The order granted Shahrokhi summary judgment as to Jafarpour's claims that a default judgment entered in state court in his favor against Shahrokhi is nondischargeable under 11 U.S.C. § 523(a)(4) and (6). For the reasons set forth below, we affirm the order of the bankruptcy court.

## I. BACKGROUND

Shahrokhi was the principal and operator of a commercial enterprise, Minnesota Taxi. Shahrokhi owned taxicabs and leased them to independent contractors who operated the taxicabs, primarily servicing the Minneapolis-St. Paul International Airport.

Jafarpour entered into a taxicab lease agreement with Shahrokhi on December 11, 1992. Although Jafarpour signed the lease, Shahrokhi did not. Pursuant to the lease, Shahrokhi was responsible for major repairs to the taxicab as well as the cost of insurance, licenses, and other expenses necessary to meet taxicab regulations of the Metropolitan Airport Commission, a political subdivision with jurisdiction of taxicab operations at the Minneapolis-St. Paul Airport. Jafarpour was responsible for routine maintenance and any damage to the taxicab. For his use of the taxicab, Jafarpour paid Shahrokhi $240.00 per week. By affidavit, Jafarpour stated that Shahrokhi told him that $120.00 of the weekly rent was to reimburse him for the expense of procuring and maintaining insurance for the taxicab. Shahrokhi gave Jafarpour an insurance identification card to display in the taxicab.

Prior to leasing the taxicab to Jafarpour, in October 1992, Shahrokhi contacted Paul Taylor, a licensed insurance agent for American Midwest Agency, Inc.

[1]The Honorable Dennis O'Brien, United States Bankruptcy Judge for the District of Minnesota.

("American Midwest") seeking automobile insurance coverage for his taxicabs. By affidavit, Taylor stated that in November 1992, Shahrokhi gave him a check in the amount of $10,125.00 as a partial down payment on the insurance policies for his taxicabs, including the taxicab ultimately leased to Jafarpour. Taylor further stated that he advised Shahrokhi that the total amount of the down payment would be $15,400.00 to bind the coverage on the taxicabs, and that the taxicabs would not be insured until the full amount of the down payment was paid to American Midwest.

On October 27, 1992, Shahrokhi filed an Application for Certificate of Title with the Minnesota Department of Public Safety, Driver and Vehicle Services. The application included Shahrokhi's certification and declaration that the taxicab ultimately leased to Jafarpour, a 1989 Chevrolet Caprice, was insured through Credit General Insurance Company ("Credit General"). Shahrokhi identified a Credit General policy number in the application. On November 4, 1992, Taylor provided the Metropolitan Airport Commission documentation certifying that the taxicab was insured under an insurance policy with Credit General, as required under Minnesota law and the Metropolitan Airport Commission. Taylor also issued Shahrokhi insurance identification cards to display in the taxicabs. It was one of these cards that Shahrokhi ultimately gave to Jafarpour to display in his leased taxicab. In his affidavit, Taylor stated he issued the certificates of insurance with the Metropolitan Air Commission and the insurance identification cards to Shahrokhi at the request of Shahrokhi, and as a favor to him, but that both he and Shahrokhi were fully aware that the taxicabs were uninsured.[2]

_____

[2] The Minnesota Commissioner of Commerce revoked Taylor's insurance agent license on August 31, 1995, based on numerous allegations of violations of Minnesota law, including "fraudulent, coercive, deceptive or dishonest acts which demonstrated him to be untrustworthy, financially irresponsible or otherwise incompetent or unqualified to act as an insurance agent[.]"

From December 11, 1992, to January 20, 1993, Jafarpour engaged in the maintenance and use of the taxicab. On January 20, 1993, Jafarpour was getting gasoline at a gas station when he slipped and fell on the ice-covered pavement near the gas pumps. Jafarpour sustained bodily injuries, and incurred expenses for medical care and treatment. In his affidavit, Jafarpour stated he incurred medical expenses "in excess of $27,395.00."

Following his injury on January 20, 1993, Jafarpour submitted his claim to American Midwest and Credit General for insurance coverage and benefits. American Midwest did not respond. Credit General denied coverage and refused to pay benefits, claiming it did not insure the taxicab involved in the incident.[3]

On May 27, 1994, Jafarpour applied to the Minnesota Automobile Assigned Claims Bureau for personal injury no-fault benefits. Jafarpour's claim was assigned to State Farm Insurance Company ("State Farm"). Under Minnesota law, Minn. Stat. § 65B.44, Jafarpour was entitled to economic loss benefits, including personal injury protection medical expense benefits in the amount of $20,000.00. According to Jafarpour, State Farm ultimately paid him the Assigned Claims Plan limit of $20,000.00, issuing its first payment for wage loss benefits on February 1, 1995.

The Social Security Administration issued a decision and ruling on June 25, 1996, finding Jafarpour to be permanently disabled due to the effects of depression and post traumatic stress disorder. He was found to be effectively disabled from April 11, 1993, and is receiving Social Security benefits.

Jafarpour brought an action against Shahrokhi, Taylor and American Midwest in a Minnesota state court in 1999. Shahrokhi was served by substitute service and did

---

[3] On February 10, 1993, Credit General issued a policy to Shahrokhi insuring the taxicab.

not respond to Jafarpour's complaint. Jafarpour moved for a default judgment. There was no appearance for or on behalf of Shahrokhi at the hearing on the default judgment motion, and on August 14, 1999, the state court issued its findings of fact, conclusions of law, and order for judgment. In its findings of fact, the state court found that as a direct and proximate cause of Shahrokhi's breach of contract, breach of fiduciary obligations, misrepresentations and/or fraud, Jafarpour suffered personal, emotional, mental and physical distress; suffered from related bodily and physical injuries; and incurred expenses. The state court entered judgment in favor of Jafarpour against Shahrokhi in the amount of $445,937.27, plus costs and attorney fees. (No. DJ 99-006054). The state court did not provide an explanation as to how it arrived at the amount of the judgment.

Shahrokhi filed a Chapter 7 bankruptcy petition on September 12, 2000. On Schedule F of his petition, Shahrokhi, relying on the state court judgment, listed Jafarpour as an unsecured creditor in the amount of $447,148.00. Jafarpour commenced a pro se adversary proceeding on December 11, 2000, objecting to the discharge of the state court default judgment on the grounds of fraud or misrepresentation, 11 U.S.C. § 523(a)(2)(A), breach of fiduciary duty, 11 U.S.C. § 523(a)(4), and willful and malicious injury, 11 U.S.C. § 523(a)(6). Shahrokhi moved for summary judgment as to Jafarpour's claims, and after a hearing on the motion, the bankruptcy court granted dismissal of Jafarpour's claims of breach of fiduciary duty and willful and malicious injury, leaving for trial only the cause of action based upon section 523(a)(2)(A). Jafarpour has appealed the dismissal of the section 523(a)(4) and (6) causes of action.

## II. STANDARD OF REVIEW

We review a bankruptcy court's grant of summary judgment de novo. Ries v. Wintz Properties, Inc. (In re Wintz Cos.), 230 B.R. 848, 857 (B.A.P. 8th Cir. 1999) Summary judgment is appropriate "only when all the evidence presented demonstrates

that 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" <u>U.S. ex rel. Gebert v. Transport Admin. Serv.</u>, 2001 WL 909335, *1 (8th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)); <u>see also</u> Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in adversary proceedings in bankruptcy).

Upon a motion for summary judgment, the initial burden of proof is on the movant to demonstrate "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986); <u>In re Wintz Cos.</u>, 230 B.R. at 858. Once met, the burden shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322, 106 S. Ct. at 2552.

The statutory exceptions to discharge in bankruptcy must be strictly construed against the creditor, in furtherance of the policy of providing the debtor with a fresh start in bankruptcy. <u>See</u> <u>Geiger v. Kawaauhau</u> (<u>In re Geiger</u>), 113 F.3d 848, 853 (8th Cir. 1997), <u>aff'd</u>, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998); <u>Werner v. Hofmann</u>, 5 F.3d 1170, 1172 (8th Cir. 1993) (per curiam). Thus, the burden of proof in the instant matter is Jafarpour's, the standard for which is proof by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991).

## III.  DISCUSSION

Jafarpour contends that the bankruptcy court erred in granting summary judgment in Shahrokhi's favor as to his claims for nondischargeability of the default judgment under 11 U.S.C. § 523(a)(4) and (6).

## A.  11 U.S.C. § 523(a)(4)

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ."  11 U.S.C. § 523(a)(4).  To prevent the discharge of Shahrokhi's debt under section 523(a)(4), it was incumbent upon Jafarpour to establish the following two elements:   (1) that a fiduciary relationship existed between Shahrokhi and Jafarpour; and (2) that Shahrokhi committed fraud or defalcation in the course of that fiduciary relationship. See Fowler Brothers v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir. 1996); Antlers Roof-Truss & Builders Supply v. Storie (In re Storie), 216 B.R. 283, 286 (B.A.P. 10th Cir. 1997);  Laddeck v. Laddeck (In re Laddeck), 2001 WL 423026, *3 (Bankr. E.D. Pa. 2001);  A.V. Reilly International, Ltd. v. Rosenzweig, (In re Rosenzweig), 1999 WL 569446, *11 (Bankr. N.D. Ill. 1999); E.W. Wylie Corporation v. Montgomery (In re Montgomery), 236 B.R. 914, 922 (Bankr. D.N.D. 1999); McCreary v. Kichler (In re Kichler), 226 B.R. 910, 913 (Bankr. D. Kan. 1998); Smolen v. Hatley (In re Hatley), 227 B.R. 753, 756 (Bankr. N.D. Okla. 1998); Werner v. Hofmann (In re Hofmann), 144 B.R. 459, 463 (Bankr. D.N.D. 1992), aff'd, 161 B.R. 998 (D.N.D. 1993), aff'd, 5 F.3d 1170 (8th Cir. 1993).

With regard to the first element, whether a relationship is a fiduciary relationship within the meaning of section 523(a)(4) is a question of federal law.  Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997), cert. denied, 522 U.S. 1112, 118 S. Ct. 1044, 140 L. Ed. 2d 109 (1998).  The fiduciary relationship must be one arising from an express or technical trust, and, thus, the

7

fiduciary relationship required under section 523(a)(4) is more narrowly defined than that under the general common law. See id.; Barclays Am./Bus. Credit, Inc. v. Long, (In re Long), 774 F.2d 875, 878 (8th Cir. 1985). Thus, "[t]he broad, general definition of fiduciary–a relationship involving confidence, trust and good faith–is inapplicable." Mills v. Gergely, (In re Gergely), 110 F.3d 1448, 1450 (9th Cir. 1997). Indeed, a fiduciary relationship can only arise from an express or technical trust "imposed before and without reference to the wrongdoing that caused the debt." In re Cochrane, 124 F.3d at 984 (quoting Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996)). A merely contractual relationship is less than what is required to establish the existence of a fiduciary relationship. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993) (per curiam).

In the instant case, the lease agreement did not impose an express or technical trust. Although Shahrokhi allegedly told Jafarpour that a portion of his rental fee was used by Shahrokhi to reimburse himself for procuring and maintaining insurance coverage for the taxicab, the lease agreement did not require Shahrokhi to use any of the money paid by Jafarpour to maintain insurance coverage. Because of the absence of an express or technical trust, the relationship between Jafarpour and Shahrokhi was merely contractual, not fiduciary. Accordingly, section 523(a)(4) does not prevent discharge of Shahrokhi's debt.

## B. 11 U.S.C. § 523(a)(6)

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). We therefore need to determine whether Shahrokhi incurred a debt for a (1) willful and malicious (2) injury (3) to Jafarpour's property.

8

With regard to the first element, the United States Supreme Court addressed the meaning of the word "willful" in 11 U.S.C. § 523(a)(6) in <u>Kawaauhau v. Geiger</u>:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional <u>injury</u>, not merely a deliberate or intentional <u>act</u> that leads to injury. . . . Moreover, as the Eight Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the <u>consequences of an act," not simply "the act itself."</u> Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).

523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). The Supreme Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of section 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences. The Eighth Circuit, on the other hand, gave the Restatement greater attention in its opinion, equating section 523(a)(6) with intentional torts, defined as actions where the actor desires to cause injury or believes that injury is substantially certain to result from his acts. <u>Geiger v. Kawaauhau</u>, 113 F.3d 848, 852 (8th Cir. 1997), <u>aff'd</u>, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998).

Applying the rule in this case, it is clear that Jafarpour's physical injury was not substantially certain to result from Shahrokhi's failure to obtain insurance. While Shahrokhi's failure to act did result in Jafarpour's lack of coverage after his slip and

fall, it cannot be said that Shahrokhi intended for Jafarpour to suffer a fall or that there was an unbroken chain of events leading from Shahrokhi's act to Jafarpour's physical injury. Operating without insurance is a clear example of recklessness. However, it was not substantially certain that Jarfarpour would suffer a physical or economic injury as a result of Shahrokhi's failure to insure the taxicab. There is simply no evidence of a correlation between Shahrokhi's misrepresenting his insurance coverage and the subsequent accident. Even though Shahrokhi's misrepresentation may have been a deliberate and intentional act, it did not directly or necessarily lead to Jafarpour's injury. This conclusion is consistent with the position of the majority of courts that have addressed the issue of whether the failure to maintain insurance is willful and malicious under section 523(a)(6). See Choi v. Brown (In re Brown), 401 B.R. 411, 414 (Bankr. W.D. Pa. 1996) (listing cases and stating that the majority of courts have determined that the mere failure to carry insurance is not a willful and malicious act on the theory that there was no intent to harm the injured party and that the failure to maintain insurance is not the act which causes harm to the injured party; that some further event, such as an accident, causes the harm). Our conclusion is also consistent with the majority of cases that permit discharge of a claim related to an employee injury where an employer has failed to maintain worker's compensation insurance. See id. (acknowledging split in authority, listing cases on both sides, and identifying majority position).

At the hearing before the bankruptcy court on the summary judgment motion, Jafarpour seemed to assert that his true injury was having to wait two years before receiving payment for his injuries, coupled with the inconvenience and frustration he suffered seeking to collect from Credit General, as a result of Shahrokhi's failure to procure and maintain insurance. However, Jafarpour has failed to cite, and we cannot locate, any persuasive or binding authority to convince us that these non-physical injuries–delay, inconvenience, and frustration–were injuries to Jafarpour's property, as required by the third element of section 523(a)(6). Accordingly, 11 U.S.C. § 523(a)(6) does not prevent discharge of Shahrokhi's debt.

## IV. CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court's grant of summary judgment as to Jafarpour's nondischargeability claims under 11 U.S.C. § 523(a)(4) and (6).

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT.