United States Bankruptcy Appellate Panel

For the Eighth Circuit

_____

No. 16-6024

_____

In re: Michael P. Harris, As surety for Faribault Mills Inc., As surety for Faribault
Woolen Mill Company

*Debtor*

------------------------------

U.S. Department of Labor

*Plaintiff - Appellee*

v.

Michael P. Harris

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted:  December 8, 2016
Filed:  January 6, 2017

_____

Before FEDERMAN, Chief Judge, SALADINO and NAIL, Bankruptcy Judges.

_____

FEDERMAN, Chief Judge

Debtor Michael Harris appeals from the Bankruptcy Court's[1] Order granting summary judgment in favor of the United States Department of Labor and declaring the Debtor's debt to it nondischargeable pursuant to 11 U.S.C. § 523(a)(4). For the reasons that follow, we AFFIRM.

## INTRODUCTION

The Department of Labor obtained a pre-bankruptcy judgment against the Debtor in the United States District Court, which found that, under ERISA, the Debtor breached his fiduciary duty when the company of which he was CEO failed to remit funds withheld from its employees' paychecks for their health insurance plan. The DOL sought to have that judgment debt declared nondischargeable as a debt for defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4). In granting summary judgment in favor of the DOL on its nondischargeability action, the Bankruptcy Court was required to determine that the Debtor committed defalcation, while acting in a fiduciary capacity, within the meaning of § 523(a)(4) of the Bankruptcy Code. As will be shown, that holding required the Bankruptcy Court to conclude: (1) that the health insurance premiums withheld from employee wages were held in trust by the employer until they were paid into the health plan (in other words, that there was a trust *res*); (2) that the Debtor himself was a fiduciary of that trust within the meaning of § 523(a)(4); and (3) that the Debtor's decision not to remit withheld wages to the health plan constituted defalcation within the meaning of that statute.

---

[1] The Honorable Michael E. Ridgway, United States Bankruptcy Judge for the District of Minnesota.

2

## STANDARD OF REVIEW / SUMMARY JUDGMENT /
## COLLATERAL ESTOPPEL

The BAP reviews *de novo* the bankruptcy court's grant of summary judgment.[2] Summary judgment is appropriate "only when all the evidence presented demonstrates that 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'"[3]

The Bankruptcy Court here gave collateral estoppel effect to certain of the District Court's factual findings in the ERISA case.

> The binding effect of a former adjudication, often generically termed *res judicata*, can take one of two forms. Claim preclusion (traditionally termed *res judicata* or "merger and bar") bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction. Issue preclusion (or "collateral estoppel") applies to legal or factual issues actually and necessarily determined, with such a determination becoming conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.[4]

Collateral estoppel bars relitigation of a factual issue if the following requirements are met: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.[5] The party seeking to

---

[2] *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Jafarpour v. Shahrokhi* (*In re Shahrokhi*), 266 B.R. 702, 706 (B.A.P. 8th Cir. 2001).

[3] *In re Shahrokhi*, 266 B.R. at 706 (citations omitted).

[4] *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997) (citations and internal quotation marks omitted).

[5] *See Johnson v. Miera* (*In re Miera*), 926 F.2d 741, 743 (8th Cir. 1983).

apply collateral estoppel has the burden of proving that all four elements are present.[6] "Collateral estoppel may only be applied if the party against whom the earlier decision is being asserted had a 'full and fair' opportunity to litigate the issue in the prior adjudication."[7]

With regard to the three above-mentioned conclusions required for summary judgment under § 523(a)(4), we hold that the Bankruptcy Court did not err in giving collateral estoppel effect to the District Court's findings that the funds withheld from the employees' paychecks constituted a trust *res* and that ERISA imposed fiduciary duties upon the Debtor as to those funds. We further hold that the Bankruptcy Court did not err in concluding that the Debtor's ERISA fiduciary duties satisfied § 523(a)(4)'s definition of a fiduciary. Finally, we hold that the undisputed facts support the conclusion that the Debtor committed defalcation while acting in that fiduciary capacity under § 523(a)(4).

## THE UNDISPUTED FACTS

The parties filed an agreed statement of undisputed facts which were based largely on (were nearly identical to) the District Court's findings in the ERISA case. As relevant here:

Faribault Woolen Mills Company was a blanket manufacturing company established in 1865. The Debtor became its CEO, President, and Board Chairman in 2001. He owned 0.3% or less of Faribault's outstanding stock and had common stock options.

Faribault sponsored, and was the Plan Administrator for, a Health Plan to provide health insurance for its employees. The Health Plan contracted with

---

[6] *Id.*

[7] *Id.* (citation omitted).

4

HealthPartners Health Insurance Company to provide the healthcare benefits for the plan participants. The participants (employees) paid 100% of the premiums via payroll deductions. Faribault withheld the premiums from the paychecks and sent monthly payments to HealthPartners on the first of each month to provide coverage for that month. Faribault did not create a separate account to hold the deductions; rather, it held them in its general operating account from which other corporate expenses were paid.

Gary Glienke, Faribault's Vice President of Human Resources, was responsible for receiving and rectifying the bills from HealthPartners for the health insurance premiums. He would then send the bills to Carla Craig, the Accounts Payable Administrator at Faribault. From January 2008 through April 1, 2009, the Debtor; Gleinke; and Faribault's CFO, Carmen Dorr, all had signatory authority on the general operating account, payroll account, and other Faribault accounts.

Faribault's payments to HealthPartners were untimely ten times in 2008, including two bounced checks, but the company was able to obtain extensions of time for payment, so coverage was not terminated. However, on January 27, 2009, Faribault issued a check, signed by the Debtor, to HealthPartners for $22,593.02 to pay the premiums owed for January 2009. That check also bounced.

In a letter dated February 28, 2009, HealthPartners informed Glienke that the January check had bounced and that it intended to cancel the Health Plan if Faribault did not pay in full. HealthPartners also sent letters to the Plan participants, informing them that Faribault had failed to remit the January premium payment. Since the Debtor was a Plan participant, he received that letter.

Meanwhile, on February 27 (the day before the bounced-check letters were sent), Faribault issued another check signed by the Debtor to HealthPartners for $19,466.91 to pay the February premium. HealthPartners returned that check to

5

Faribault, along with a notice that HealthPartners would now only accept wire payments due to the prior bounced checks.

On March 26, the Debtor personally asked HealthPartners for an extension to pay the January and February premiums. HealthPartners denied that request and demanded full payment of the January and February premiums by March 31. It is undisputed that the total available to Faribault for payment to HealthPartners between March 26 and 31 was in excess of $70,000,[8] but Faribault paid other expenses instead. It is also undisputed that, from that $70,000, the Debtor directed that Faribault make a March 30 payment of $4,000 to his American Express account, and a March 31 payment of $21,531.48 on his home equity line of credit.[9]

While this was happening, the Faribault Board, on March 27, 2009, voted to retain a turnaround consultant. Harris lost control of the company's finances sometime after March 2009, and resigned as CEO in May 2009. The company was later liquidated.[10]

HealthPartners canceled the policy on April 1, 2009, retroactive to January 31, 2009, due to non-payment of the premiums. Faribault never remitted $55,040.61 it had withheld from the employees' paychecks for insurance premiums from January 9 to March 20, 2009. Forty-two employees (and some of their families) were affected by the Plan's cancelation.

---

[8] *Statement of Uncontested Facts* ¶ 56.

[9] *Id.* Faribault made another payment for the Debtor's benefit on March 27, in the amount of $1,500, but the Statement of Uncontested Facts does not expressly state that the Debtor personally directed that payment be made. *Id.*

[10] *Id.* at ¶¶ 44 and 49.

On December 19, 2012, the Secretary of the Department of Labor filed a lawsuit against the Debtor, alleging he violated ERISA by failing to remit the $55,040.61 in withheld healthcare premiums to HealthPartners. Specifically, the Secretary alleged that, by failing to remit the withheld premiums, the Debtor breached his fiduciary duty of loyalty to Faribault's employees and their Health Plan in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). Following a three-day bench trial, on November 9, 2015, the District Court for the District of Minnesota entered judgment in favor of the DOL in the total amount of $67,839.60 (which included pre-judgment interest), concluding that the Debtor violated his fiduciary duty of loyalty under ERISA by diverting the employee contributions to pay for corporate expenses and his own home equity loan.

The Debtor filed a Chapter 7 bankruptcy case on November 23, 2015. The DOL filed an unsecured claim for $67,839.60 based on the judgment. It also filed this nondischargeability action under § 523(a)(4). After both parties filed motions for summary judgment, the Bankruptcy Court granted the DOL's motion for summary judgment at a hearing held on July 19, 2016.

## NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from an individual debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity."[11] The exception to discharge under §523(a)(4) is construed narrowly against the creditor opposing discharge.[12]

"The fiduciary relationship must be one arising from an express or technical trust, and, thus, the fiduciary relationship required under section 523(a)(4) is more

---

[11] 11 U.S.C. § 523(a)(4).

[12] *In re Thompson*, 686 F.3d 940, 944 (8th Cir. 2012).

narrowly defined than that under the general common law."[13]   Although often created by contract, a trust relationship satisfying § 523(a)(4) can be created by statute,[14] such as ERISA.  However:

> It is not enough [ ] that a statute purports to create a trust:  A [statute] cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of § 523(a)(4) a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.[15]

In addition, the debtor must be a trustee "before the wrong and without reference thereto."[16]

Thus, as stated by the Bankruptcy Court, summary judgment in this case turned on three questions:  (1) was there a trust *res*?; (2) did the Debtor (as opposed to just the Faribault corporation) have fiduciary responsibilities with respect to that trust?; and (3) did the Debtor commit defalcation in directing that Faribault pay expenses other than the past due premiums in the last week of March 2009?  We treat each question in turn.

---

[13] *In re Shahrokhi*, 266 B.R. at 707 (citing *Tudor Oaks L.P. v. Cochrane* (*In re Cochrane*), 124 F.3d 978, 984 (8th Cir. 1997), *cert denied*, 522 U.S. 1112, 118 S.Ct. 1044, 40 L.Ed.2d 109 (1998); *Barclays Am./Bus. Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 878 (8th Cir. 1985)).

[14] *In re Nail*, 680 F.3d 1036, 1039-40 (8th Cir. 2012).

[15] *Id.* (citation omitted).

[16] *Id.* at 1041 (citation omitted).

## Were Funds Withheld from Employee Wages Held in Trust?

In its ERISA judgment, the District Court found that the $55,000 in employee health insurance benefit premiums that were withheld from the paychecks were "plan assets" and that they became so as of the date on which the employees' wages were paid (i.e., the date on which the employees' contributions were withheld).[17] There is no genuine issue of material fact as to the amounts withheld from wages and not paid over to the fund. The issue on this point is whether a trust was created in those "plan assets," sufficient that fiduciary duties can be imposed under § 523(a)(4).

The Debtor relies primarily on *In re Long*[18] and *Hunter v. Philpott*[19] in support of his position that he was not a fiduciary under § 523(a)(4). In *Long*, the Eighth Circuit held that § 523(a)(4) only applies to trustees of express trusts, in the "strict and narrow sense," and that corporate officers should not automatically be impressed with the corporation's fiduciary responsibilities. Instead, the Eighth Circuit said, "[i]t is the substance of the transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes.[20]

*Hunter v. Philpott* was a § 523(a)(4) case in which the debtor was an officer of a corporation which was contractually obligated to make payments to funds on

---

[17] Citing 29 C.F.R. § 2510.3-102(a)(1); *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008).

[18] 774 F.2d 875 (8th Cir. 1985).

[19] 373 F.3d 873 (8th Cir. 2004).

[20] *In re Long*, 774 F.2d at 878-89.

behalf of employees, and thus found to have fiduciary obligations under ERISA. In that case, despite being a fiduciary under ERISA, the Eighth Circuit held that the officer could not be held liable as a fiduciary under the "strict and narrow" sense required under § 523(a)(4).[21] The Eighth Circuit instructed courts to first "look specifically at the property that is alleged to have been defalcated to determine whether [the debtor-officer] was legally obligated to hold that specific property for the benefit of the Funds."[22] In other words, although the Eighth Circuit did not expressly say so in *Hunter*, the implication is that if there is no specific property – no *res* – then there can be no § 523(a)(4) fiduciary duties imposed on the officer. In part because neither the corporation nor the debtor-officer in *Hunter* had a legal obligation to hold the employer contributions for the benefit of the plan (or employees), the debtor-officer was held not to have fiduciary duties under § 523(a)(4).

Critically, *Hunter v. Philpott* did not involve funds that had been withheld from employee wages; rather, that case involved corporate contractual obligations to make the payments for the employees' benefit. Therefore, while the officer in *Hunter v. Philpott* may have been liable as a fiduciary under ERISA, he was not liable under § 523(a)(4).

Here, in contrast, Faribault had withheld the Health Plan premiums from the employees' paychecks, and the District Court held that those premiums became "plan assets" as of the dates on which the employees' paychecks were cut. In other words, in contrast to *Hunter v. Philpott* – where the corporation simply failed in its obligation to pay a bill for the benefit of employees – Faribault was holding funds

---

[21] *Hunter v. Philpott*, 373 F.3d at 876.

[22] *In re Pottebaum*, 2013 WL 5592368 (Bankr. N.D. Iowa Oct. 9, 2013) (quoting *Hunter v. Philpott*, 373 F.3d at 875).

that actually belonged to someone else – hence, the trust *res* – and it had a duty to use the employees' money to make the premium payments. Consistent with this premise, there is a clear division in the bankruptcy cases as to whether a trust *res* is created, depending on whether the funds to be contributed have been withheld from employee wages, or are simply a debt of the company.[23] Unlike *Hunter*, this case fits squarely with those cases holding that a trust is created when the employer withholds wages for payments to a plan providing benefits to employees. Therefore, in contrast to *Hunter*, a trust *res* was created here.

---

[23] *Compare*, *In re Luna,* 406 F.3d 1192, 1208 (10th Cir. 2005) (stating that the court was not inclined to hold that officers of a company with an ERISA-covered fund automatically become fiduciaries under the Bankruptcy Code); *In re Halpin,* 370 B.R. 45, 50 (N.D. N.Y. 2007) (holding that the debtor did not bear fiduciary responsibilities with regard to unpaid employer contributions); *In re Popovich,* 359 B.R. 799, 806 (Bankr. D. Colo. 2006) (finding failure to make employer contributions was a breach of contract, but not a breach of fiduciary duty); *In re Tsikouris,* 340 B.R. 604, 617 (Bankr. N.D. Ind. 2006) (the promise to pay an employer's component of plan contributions creates just another debt); *In re Engleman,* 271 B.R. 366, 370 (Bankr. W.D. Mo. 2001) (no fiduciary duty as to employer obligations to contribute), *with Chao v. Gott* (*In re Gott*), 387 B.R. 17 (Bankr. S.D. Iowa 2008) (discussing the distinction between employer contributions and a failure to properly apply employee contributions or invest employee assets); *Eavenson v. Ramey,* 243 B.R. 160, 166 (N.D. Ga. 1999) (finding the debtor used employee contributions as general funds); *Chao v. Johnson* (*In re Johnson*)*,* 2007 WL 646376, at *5 (S.D. Tex. Feb. 26, 2007) (finding the debtor permitted employee contributions to be commingled with corporate accounts); *In re O'Quinn,* 374 B.R. 171, 175 (Bankr. M.D. N.C. 2007) (finding debtor failed to apply amounts deducted from an employee's paycheck toward ERISA plan insurance premiums); *In re Weston,* 307 B.R. 340, 343 (Bankr. D. N.H. 2004) (finding debtor failed to adequately fund health plan with employee contributions); *In re Gunter,* 304 B.R. 458, 462 (Bankr. D. Colo. 2003) (amounts withheld from employee wages for pension funds were a *res* subject to fiduciary obligations); *In re Coleman,* 231 B.R. 393, 396 (Bankr. S.D. Ga. 1999) (fiduciary duty exists as to funds withheld from employee wages).

## Was the Debtor a Fiduciary under § 523(a)(4)?

As stated above, funds withheld from an employee's wages are held in trust by the employer, and ERISA imposes fiduciary obligations as to such a trust upon anyone who exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.[24]  In contrast to § 523(a)(4)'s "strict and narrow" construction, under ERISA, the term "fiduciary" is to be broadly construed.[25]

The District Court here found that, under ERISA, the Debtor exercised authority or control respecting the management or disposition of the Health Plan premiums withheld from Faribault's employees' paychecks.  The District Court said the question of fiduciary status does not hinge on whether an individual is intimately involved in – and exercises authority or control over – every financial matter within a company; rather, the relevant inquiry under ERISA is whether the individual

---

[24] 29 U.S.C. § 1002(21)(A) states, specifically:

(21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

[25] *Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991).

"exercises any authority or control respecting *management or disposition of [plan] assets.*"[26] The Debtor did, the Court held, exercise such authority and control. Therefore, the Debtor was found to be an ERISA fiduciary from at least January 1, 2009 to March 31, 2009. The question here is whether that statutory fiduciary status, imposed by ERISA, is sufficient to impose fiduciary duties on the Debtor for purposes of § 523(a)(4).

As stated, the Debtor, the CFO, and the Vice President of Human Resources all had signing authority on Faribault's checking accounts. However, the Debtor concedes that, as CEO, he had the ultimate authority as to which bills to pay.[27] The District Court found that the Debtor "was personally involved – and exercised his authority – in the decision not to remit employee withholdings to the Health Plan,"[28] and that he "instead us[ed] those assets to pay corporate creditors and personal expenses."[29] And, the District Court found that the Debtor's authority existed throughout the period in which funds withheld from wages were not remitted to HealthPartners.[30] Because the issue of the Debtor's authority and control over the employee withholdings during the relevant timeframe is (1) the same as that involved in the ERISA action; (2) was actually litigated; (3) was determined by a

---

[26] *Findings of Fact, Conclusions of Law, and Order for Judgment*, Case No. 12-CV-3136, attached as Exhibit 3 to *Defendant's Notice of Hearing and Motion for Summary Judgment*, ECF No. 11 at 25 (emphasis in original).

[27] *See Appellant's Brief* at 4.

[28] *Findings of Fact, Conclusions of Law, and Order for Judgment* at 24.

[29] *Id*. at 27.

[30] *Id*. at 24.

13

valid and final judgment; and (4) was essential to the prior judgment, collateral estoppel applies to those findings.[31]

Thus, the DOL established that, in the last week of March 2009, it was the Debtor who chose to pay other bills, rather than the premiums necessary to maintain health insurance coverage for the employees. The Debtor was the person who had ultimate responsibility to determine which bills would be paid out of the company's scarce resources, and he exercised that authority to his own benefit. We conclude that the Bankruptcy Court properly held that the Debtor had fiduciary responsibilities with respect to funds that had been withheld from wages for payment to HealthPartners.

## Did the Debtor Commit Defalcation as to the Health Plan Funds?

"Defalcation is defined as the misappropriation of trust funds or money held in any fiduciary capacity; [and the] failure to properly account for such funds."[32] As the Debtor points out, and the DOL acknowledges, the Supreme Court held in *Bullock v. Bankchampaign NA*,[33] that defalcation under § 523(a)(4) requires a showing of intentional wrong.

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as

---

[31] *See Johnson v. Miera* (*In re Miera*), 926 F.2d 741, 743 (8th Cir. 1983).

[32] *In re Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997).

[33] 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013).

14

equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.[34]

As stated, while reckless conduct may be sufficient, it must be "reckless conduct of the kind that the criminal law treats as the equivalent."[35]

As the DOL suggests, the District Court held that the Debtor breached his ERISA fiduciary duty when he "deci[ded] not to remit the employee withholdings to HealthPartners," and "instead us[ed] those assets to pay corporate creditors and personal expenses." However, the District Court did not make any findings with regard to the standard of intent under § 523(a)(4). We therefore turn to the undisputed facts.

There is no dispute that the Debtor was informed in early March that the expected financing had fallen through. It is further undisputed that, by at least March 26, 2009, the Debtor knew that the January and February premium payments had not been made and that HealthPartners had demanded full payment before March 31 or the Plan would be canceled. Indeed, on March 26, the Debtor personally requested an extension of the March 31 deadline to pay HealthPartners, and was rejected. Also, it is undisputed that between March 26 and March 31, over $70,000 was either transferred to other Faribault accounts or was used to pay creditors and expenses other than HealthPartners. Moreover, it is undisputed that the Debtor directed Dorr

---

[34] 133 S.Ct. at 1759-60 (emphasis in original; citations omitted).

[35] 133 S.Ct. at 1759.

to pay his own home equity line of credit and other expenses instead of HealthPartners between March 26 and March 31.

The Bankruptcy Court held that such acts constitute an intentional misappropriation of trust funds, or at the least, a misappropriation of trust funds undertaken with conscious disregard to the substantial and justifiable risk that doing so would result in a breach of fiduciary duty of loyalty. The Court found that simply paying HealthPartners instead of other corporate expenses would have fulfilled that duty.[36] In other words, the Debtor committed defalcation as that term is used in § 523(a)(4) when he knowingly failed to remit employee contributions to HealthPartners and instead knowingly used those funds to pay for other corporate expenses.

*Raso v. Fahey* (*In re Fahey*)[37] is a post-*Bullock* case with facts similar to the ones here. There, the court concluded that the debtor had committed defalcation when he violated his duty of loyalty to an ERISA plan, explaining:

> The Debtor does not dispute that he was aware of his obligations to the Funds, but nonetheless failed to remit the assets. Instead, the undisputed facts indicate that the Debtor prioritized the payment of corporate expenses that were beneficial to him . . . over his obligations to the Funds. In so doing, he violated the duty of loyalty to the beneficiaries of the Funds . . . [and] committed a defalcation within the meaning of 11 U.S.C. § 523(a)(4).[38]

---

[36] *See Stoughton Lumber Co. v. Sveum*, 787 F.3d 1174, 1177 (7th Cir. 2015) (defining "gross recklessness" under *Bullock* as "knowing that there is a risk of serious harm and that it can be averted at reasonable cost, yet failing to act on that knowledge").

[37] 494 B.R. 16 (Bankr. D. Mass. 2013).

[38] *Id*. at 21-22.

16

The Debtor points out that until late March, he did not know that the January and February premiums had not been paid. He also points out that he personally borrowed over $900,000 from his home equity line of credit, apparently in an attempt to keep Faribault afloat. He also chose not to seek reimbursement of over $31,000 in expenses at the end. And, he took only one paycheck in the first quarter of 2009. Furthermore, he was working hard at the end trying to find investors and financing and, indeed, until early March, he believed he had obtained $12.5 million in financing, which would have fully paid all the premiums. The Debtor asserts that, as in *In re Pottebaum*,[39] which held that there was no defalcation, he was only trying to keep the company afloat so everyone could get paid.

But the Debtor misses the issue, which is his state of mind between March 26 and March 31, when he chose not to pay approximately $55,000 to maintain the employees' health insurance, despite having more than $70,000 available during that time. By then, the Debtor had been advised that the financing had fallen through and that HealthPartners would not grant Faribault an extension on payment. There is no genuine issue as to these facts.

Debtor also argues that there were not sufficient funds to pay the premium in full, so he chose to pay other bills instead. DOL responds by saying that, even if there were less than $55,000 available as of March 26, whatever funds were there were being held in trust for the employees, and therefore should have either been used to pay the premiums due or returned to the employees. Between March 26 and 31, the Debtor knew that more than $55,000 of the funds in Faribault's operating accounts were withheld from employee wages and did not belong to the company – yet, the Debtor chose to use those funds to pay personal and corporate expenses.

---

[39] 2013 WL 5592368 (Bankr. N.D. Iowa Oct. 9, 2013).

17

On a summary judgment motion, the burden on the moving party "is only to demonstrate, *i.e.,* to point out . . . , that the record does not disclose a genuine dispute on a material fact."[40] The non-moving party then must set forth specific facts showing a genuine issue of material fact for trial.[41] "A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party."[42] "A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that may be drawn from those facts."[43] The bankruptcy court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely to determine whether there is a genuine issue of fact for trial.[44] "Conclusional allegations and denials, speculation, improbable

---

[40] *City of Mt. Pleasant, Iowa v. Assoc. Elec. Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (internal quote marks, brackets, and citation omitted).

[41] *Dico, Inc. v. Amoco Oil Co.*, 340 F.3d 525, 529 (8th Cir. 2003). *See also Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (holding that the non-movant may not rest upon mere allegations of denials in its pleadings, but must set forth sufficient admissible evidence to create a genuine issue of material fact in order to avoid summary judgment).

[42] *U.S. Bank Nat'l Assoc. v. U.S. Rent a Car, Inc.*, 2011 WL 3648225 at *3 (D. Minn. Aug. 17, 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[43] *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986)).

[44] *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 750 (B.A.P. 8th Cir. 2000) (citations omitted).

inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[45]

The Bankruptcy Court held that the Debtor acted with "conscious disregard to a substantial and unjustifiable risk that his conduct [in not using the $70,000 to either pay the premiums or repay the employees] would violate a fiduciary duty." Based on the undisputed facts, and based on the Debtor's failure to offer a justifiable reason for his decision not to use the remaining funds for the benefit of the employees for whom they were held in trust, the Bankruptcy Court properly concluded that there was no genuine issue of material fact as to his intent, and that DOL was entitled to judgment as a matter of law.

_____

---

[45] *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).